MAXEY, APPELLANT, *v.* LENIGAR ET AL., APPELLEES.

(No. 83AP-864—Decided
March 27, 1984.)

*Messrs. Michael F. Colley Co.,
L.P.A.,* and *Mr. Frank A. Ray,* for appellant.

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Ronald J. O'Brien, Mr. Patrick McGrath, Mr. James D. Gilbert* and *Mr. Robert Levering,* for appellees.

WHITESIDE, J. Plaintiff, William K. Maxey, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants and raises two assignments of error, as follows:

"1. The trial court erred by sustaining defendants' second motion for summary judgment in that identical issues of law and fact were raised in defendant's first motion for summary judgment, thereby ignoring collateral estoppel as to the second motion.

"2. The trial court erred by sustaining defendants' second motion for summary judgment on the ground that plaintiff could produce no evidence that the police were not responding to an emergency call."

Plaintiff's first assignment of error is not well-taken.

Although both motions for summary judgment were predicated upon the same evidence and the same law, the order overruling the first motion for summary judgment was interlocutory in nature and subject to revision by the trial court at any time prior to the entering of a final judgment in the case. An order overruling a motion for summary judgment is not a final appealable order but is reviewable on appeal from a subsequent adverse final judgment. *Balson* v. *Dodds* (1980), 62 Ohio St. 2d 287 [16 O.O.3d 329]. Similarly, an order overruling a motion for summary judgment is subject to revision at any time prior to the entering of such a final judgment to correct an error made by the court. If the trial court errs in overruling a motion for summary judgment, it is not necessary that that court wait until the judgment is reversed upon appeal, but, instead, the court may correct its error either upon a motion for reconsideration or upon a new motion for summary judgment predicated upon the same law and facts.

On the other hand, when considering the second motion for summary judgment predicated upon the same basis, the trial court should reexamine

the evidence submitted in connection with the first motion for summary judgment, as well as any additional evidence presented, and, predicated upon the totality of proper evidence pursuant to Civ. R. 56(C), determine whether or not in connection with the second motion for summary judgment reasonable minds could come only to an adverse conclusion to the party against whom the motion is made after construing all the evidence most strongly in favor of that party. This, however, is pertinent to the second assignment of error.

The trial court, in sustaining the second motion for summary judgment, stated in pertinent part in the decision: "It would not appear that plaintiff could produce any material evidence indicating that the police in this instance were not responding to an emergency call." Both motions for summary judgment were predicated upon the defense pursuant to R.C. 701.02 that defendant Christopher E. Lenigar was a police officer responding to an emergency call at the time that he ran his cruiser over plaintiff Maxey who had just fallen from a motorcycle which slid out from under him in front of the cruiser.

R.C. 701.02 makes a municipality liable for negligence of its officers and agents engaged in the operation of motor vehicles upon the public highways, but provides that:

"The defense that the officer, agent, or servant * * * was engaged in performing a governmental function, shall be a full defense as to the negligence of:

"(A) Members of the police department * * * while responding to an emergency call; * * *"

R.C. 701.02 further provides that: "Policemen shall not be personally liable for damages for injury or loss to persons * *.* caused while engaged in the operation of a motor vehicle while responding to an emergency call." As R.C. 701.02 expressly provides, the immunity from liability granted by R.C. 701.02 is a defense, namely, an affirmative defense, with the burden of proof upon the party asserting such defense as a basis for immunity from liability for negligence in the operation of the motor vehicle for which he otherwise would be liable. Thus, the thrust of the trial court's decision was incorrect in that, if there be a trial, it is not necessary that plaintiff prove that defendant Lenigar was not responding to an emergency call but, instead, the burden is upon defendants to prove that he was.

Regardless of who has the burden, however, the issue before us is whether there is a genuine issue of fact as to whether defendant Lenigar was responding to an emergency call or, stated differently, when the evidence is construed most strongly in favor of plaintiff, could reasonable minds reach different conclusions as to whether defendant Lenigar was responding to an emergency call.

In support of their motion for summary judgment, defendants resubmitted affidavits of defendant Lenigar and of his partner, police officer Wintering, together with certified copies of some papers unidentified in the certificate of the municipal court clerk. Since they are only semi-legible, it is difficult to read or ascertain what they purport to be but, presumably, they are copies of affidavits filed against defendants, together with a copy of some type of record of proceedings with respect thereto.

In any event, defendants contend that these certified copies indicate that plaintiff pleaded guilty to a charge of reckless operation of his motorcycle and thereby admitted that he was speeding at a rate in excess of sixty m.p.h. in a thirty-five m.p.h. zone. We note that there is no contention that plaintiff pleaded guilty to a charge of speeding. In making this contention, defendants overlook the distinction between a plea of guilty and a plea of no contest. A plea of no contest is at most an admission of

the truth of the facts alleged in the affidavit, but not an admission of guilt of the charge, and cannot be used against the defendant in any subsequent proceeding. On the other hand, a plea of guilty admits the guilt of the charge but does not necessarily admit the truth of the facts alleged in the affidavit, where, as here, there are several different acts alleged which could constitute the offense of which the plaintiff is pleading guilty. In any event, this would only constitute evidence not being conclusive upon the issue of the defense of responding to an emergency call.

In the affidavits, both officers stated that plaintiff travelled at a speed in excess of sixty m.p.h. in a thirty-five m.p.h. zone, as well as changed lanes without safety and failed to yield to oncoming traffic. In the deposition, however, submitted in connection with the first motion for summary judgment, Wintering testified that the speed was in excess of fifty m.p.h. but that she was not looking at the speedometer. Lenigar, on the other hand, in his deposition, testified that he travelled between fifty-five and sixty m.p.h. in attempting to catch up with plaintiff before plaintiff slowed up prior to making a left turn, and after completing that turn was travelling at no more than twenty-five m.p.h. when plaintiff fell off the motorcycle.

Both Lenigar and Wintering indicated that the cruiser's flashing lights and siren were in operation. An independent eyewitness, however, by deposition filed by plaintiff in opposition to the second motion for summary judgment and verified as being accurate by counsel, indicated that the cruiser had neither its flashing beacon lights nor siren in operation immediately prior to the collision. Plaintiff, however, indicated that, at the time of the collision, he was in the process of trying to stop because he noticed the lights of the cruiser out of the corner of his eye, presumably meaning the flashing beacon lights, but that he heard no siren.

The only reported case involving the question of whether pursuit of a suspected traffic violator is responding to an emergency call is *Lingo* v. *Hoekstra* (1964), 176 Ohio St. 417 [27 O.O.2d 384], wherein it was held that, pursuing a suspected traffic violator to determine whether he was speeding does not constitute responding to an emergency call, even though the suspected violator runs through a red traffic light during such pursuit, the pursuing police vehicle, while going through the same red traffic light, having struck a vehicle proceeding with a green traffic light. In the opinion of *Lingo*, but not in the syllabus, there is a discussion of the word "call" as used in the phrase, "emergency call," in R.C. 701.02, with the statement at 421 that: "The word 'call' * * * refers not just to a call in person or by a medium of communication from a citizen, superior officer of the policeman or police dispatcher, but rather to a 'call to duty.' " However, the opinion goes on to state that this is not conclusive since the call must be of an emergency nature, that is: "[D]id it arise from such a dangerous situation that it would excuse the defendant from being liable for his negligent conduct? * * *"

Circumstances which have been held to constitute responding to an emergency call include response to a radio call that there is a fight at a high school and that the officers there need immediate help (*Agnew* v. *Porter* [1970], 23 Ohio St. 2d 18 [52 O.O.2d 79]); transporting three persons who have received injuries in an accident to the hospital in an ambulance (*McDermott* v. *Irwin* [1947], 148 Ohio St. 67 [35 O.O. 41]); responding to an order of a superior officer to proceed immediately to a place where a body had been found to make an immediate investigation (*Spencer* v. *Heise* [1958], 107 Ohio App. 505 [9 O.O.2d 48]); and responding to a radio message from a

superior officer to proceed to a certain address where there was "trouble" (*Rankin* v. *Sander* [1953], 96 Ohio App. 40 [54 O.O. 164]).

Nevertheless, we would conclude that, pursuit of a traffic violator who is creating a continuing hazard to the persons using a highway so as to protect such travelling public from the hazard of the violator by his immediate apprehension could constitute response to an emergency call. Presumably, however, if such a danger is in existence, the officer would immediately comply with the provision of R.C. 4513.21 and turn on both the flashing beacon lights and siren so as to warn the travelling public not only of the danger of the violator but also of the danger created by the police vehicle's not conforming to ordinary traffic laws in pursuing the violator. Although the use of flashing lights and siren are not determinative of whether or not a police officer is responding to an emergency call, their nonuse is evidence of the nature of the call to duty as perceived by the officer. In *Lingo, supra,* the Supreme Court specifically held to the effect that, continuing to pursue a suspected speeder after he committed a traffic violation by running through a red light does not create such an emergency as to invoke the immunity of R.C. 701.02 with respect to the police officer's running through the same red light at the same intersection.

*King* v. *Williams* (1983), 5 Ohio St. 3d 137, relied upon by the trial court, involved a fireman (rather than a police officer), who is granted immunity from liability while engaged in the performance of a governmental function. As to liability of the municipal corporation, the fireman must have been proceeding to a place where a fire was in progress or believed to be in progress or answering another emergency alarm. In *King*, it was uncontroverted that the ambulance involved was on an emergency run.

Here, construing the evidence most strongly in favor of plaintiff, reasonable minds could reach different conclusions as to whether or not defendant Lenigar was responding to an emergency call at the time and under the circumstances in question. There was conflicting evidence as to the use of the flashing beacon lights and siren, as to the initial speed of plaintiff, as well as his speed at the time of and after making the left turn, as to other traffic in the vicinity and as to plaintiff's manner of operation of his motorcycle. The teaching of *Lingo* is that, while a police officer's observance of a traffic violator gives rise to a call to duty, not every such call to duty constitutes an emergency call, the existence of the emergency to be determined by the danger involved and the need for immediate action. In this regard, the evidence is uncontradicted that defendant Lenigar followed plaintiff for some distance before the occurrence of the accident and that plaintiff had substantially reduced his speed. Plaintiff admitted that, when he pulled onto Broad Street from an intersecting street, he did not sufficiently yield the right-of-way to an oncoming vehicle, which he later assumed to be the police vehicle, and accelerated in order to get out of the way of that approaching vehicle, which he contended he could not see until he pulled onto Broad Street because of buildings and parked cars.

Accordingly, from the evidence before the trial court pursuant to Civ. R. 56(C) upon defendants' motion for summary judgment, the trial court erred in finding that defendant Lenigar was on an emergency call as a matter of law, inasmuch as, construing that evidence most strongly in favor of plaintiff, a factual issue is presented as to the nature of defendant Lenigar's call to duty, as to which reasonable minds could reach different conclusions. The second assignment of error is well-taken.

For the foregoing reasons, the first assignment of error is overruled, and

the second assignment of error is sustained; and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and cause remanded.*

MCCORMAC, P.J., and REILLY, J., concur.