OPINION
Plaintiff-appellant, Robin D. Brown, appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Performance Auto Center, Inc., kna Performance Automotive Network ("Performance"), Heritage Oldsmobile Cadillac, Inc. ("Heritage"), and Star Bank, N.A. ("Star Bank"), in an action for conversion.
On May 26, 1989, appellant bought a 1985 Oldsmobile Ciera from Heritage for $8,591.76, which she financed through Star Bank. Appellant's financing agreement with Star Bank specifically provided that appellant was to make forty-eight payments of $266.05 each, that payments were due monthly beginning June 25, 1989, and that appellant would be charged $10 for every late payment.
Copies in the record of checks and money orders paid by appellant to Star Bank show that as early as October 1989 appellant was late in her payments. It is undisputed that appellant was repeatedly in default of her payment obligations during the course of the loan. As a result, a dispute arose between appellant and Star Bank as to how much appellant still owed Star Bank after she allegedly made her forty-eighth and final payment.
On November 17, 1993, Star Bank assigned appellant's loan with the bank to Performance. Although notified of the assignment, appellant did not contact Performance nor did she make any payment. On January 10, 1994, Performance filed a suit against appellant in the Fairfield Municipal Court, Small Claims Division, for $747.43. Appellant's car was subsequently repossessed by Express Recovery, Inc.[1]
On February 9, 1994, Matthew Brian Maupin ("Maupin"), Performance's general manager, sent the following notice to appellant:
 Pursuant to the terms and conditions of the Retail Installment contract signed by you with Star Bank on May 26, 1989, and having been formally assigned all rights to exercise the contract by star [sic] Bank, Performance Automotive has taken posession [sic] of the 1985 Olds #1G3aM27R4FG309253, due to your failure to pay your account in a timely manner as stated in the above-mentioned agreement.
 You may redeem your automobile by paying all amounts in arrears as well as the out-of-pocket expense associated with the reposession [sic].
 Please contact my office at 513-829-8236 to make arrangements to bring this matter to a close.
 If you fail to pay the full amount in arrears within (20) days, your vehicle will be sold to the highest bidder and the proceeds applied to your acciout [sic].
Appellant claims she never received the foregoing notice.
In his deposition, Maupin testified he tried to sell appellant's car at the Cincinnati Auto Auction but felt that the sale price was too low. The car was subsequently sold on March 14, 1994 to Eric Fuhrman for $479.52. Performance subsequently dismissed its suit against appellant in the Fairfield Municipal Court. Performance never sought a deficiency judgment against appellant.
On November 30, 1994, appellant filed a complaint in the trial court against appellees alleging malicious prosecution, conversion, violation of the Federal Fair Debt Collection Act and the Ohio Consumer Sales Practices Act, unjust enrichment, fraud, and defamation. Appellees filed a joint motion for summary judgment on July 20, 1995. Appellant filed a motion for summary judgment on August 24, 1995.
By entry filed November 13, 1995, the trial court denied appellant's motion for summary judgment and granted appellees' joint motion for summary judgment on all counts except on Count 2 of appellant's complaint, appellant's conversion claim. The matter proceeded to arbitration on the conversion claim. On February 7, 1996, the arbitration panel found in favor of appellant against Heritage and Performance but awarded her no damages. The panel also found in favor of Star Bank.
Appellant thereafter appealed the arbitration decision to the trial court. On July 10, 1996, Star Bank filed a motion for summary judgment. Two days later, Performance and Heritage filed a motion for summary judgment. By entry filed September 16, 1996, the trial court granted appellees' motions for summary judgment. Appellant timely filed this appeal and raises four assignments of error. Appellant's first assignment of error reads as follows:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION SINCE A TRIER OF FACT COULD INFER NO NOTICE WAS SENT SINCE THE DEFENDANT DOCTORED A DATE AND ALSO WROTE "PAID IN FULL" ON A DATE (FEBRUARY 15, 1994) PRIOR TO THE DEADLINE TO REDEEM THE COLLATERAL (20 DAYS FROM FEBRUARY 9, 1994, THE DATE ON THE "DISPUTED" NOTICE) AND THE NOTICE, IF SENT, WAS DEFECTIVE.
Appellant argues that it was error for the trial court to grant appellees' renewed motions for summary judgment with regard to her conversion claim because Maupin's February 9, 1994 notice to appellant was either not sent, or if sent, was defective. Appellant contends that in light of the fact that she never received the notice, that the date of the repossession of her car was allegedly "doctored" by Performance on a document, and that Performance had several inconsistencies with regard to the sale of her car, the trial court should have inferred that the notice was never sent. Appellant further contends that if it was sent, the notice was defective because Performance "sold the car before the stated date and the method of sale was not commercially reasonable."
Civ.R. 56(C) provides in part that summary judgment shall be rendered when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Additionally, a party who opposes a motion for summary judgment may not rest upon the allegations or denials in his pleadings but must affirmatively demonstrate the existence of genuine issues of material fact in order to prevent the granting of a motion for summary judgment. Civ.R. 56(E); Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115.
R.C. 1309.47 governs a secured party's right to dispose of collateral after default and provides in relevant part:
 (C) Disposition of the collateral may be by public or private proceedings * * * but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. * * * [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor * * *.
It is well-established that "a secured creditor can satisfy the notice requirements set forth in R.C. 1309.47 merely by sending notice to the debtor. Actual receipt of the notice is not required * * *." Ford Motor Credit Co v. Potts (1989), 47 Ohio St.3d 97,99. Thus, "[a] creditor complies sufficiently with R.C. 1309.47 if he takes reasonable steps to notify the debtor of the intention to resell repossessed collateral." Soc. Bank, N.A. v. Cazeault (1993), 83 Ohio App.3d 84, 87.
In the case at bar, appellant's affidavit states that she never received the February 9, 1994 notice. Maupin's three affidavits state that he sent the notice to appellant on February 9, 1994. We note that appellant's affidavit neither contradicts nor is inconsistent with Maupin's affidavits. In light of all of the foregoing, we therefore find that the trial court did not err in failing to infer that Performance did not send the notice because appellant did not receive it.
Appellant argues that the inference that the notice was not sent is supported by appellant's exhibit No. 5, a handwritten note which reads: "Picked up at 1:45 at home[.] Owner notified keys recovered from owner[.] No police called for that reason[.] [signed] Express Recovery [illegible signature]" and which has a date on the top left of the document. Appellant claims that the date was "doctored" by Performance from "1-16-94 to 2-6-94 by crossing out the `1'; the `1' in `16' was then changed to `2' and a `dash' put between the `1' (now 2) and the `6'."
After reviewing the allegedly "doctored" document, we find that the trial court did not err in failing to infer from the document that notice was not sent. While the date was apparently modified, there is absolutely no evidence as to who modified it (Performance or Express Recovery), or that the date was modified for "doctoring" purposes. Thus, appellant's allegation that the document was doctored is not supported by any other evidence. As previously stated, a party who opposes a motion for summary judgment may not rest upon mere allegations. By contrast, appellant's exhibit No. 4 shows a handwritten repossession date of "2-7-94." In addition, in an affidavit dated September 18, 1995, Maupin stated that "[o]n February 7, 1994, [he] was notified by Express Recovery, Inc., that it had successfully repossessed the vehicle that was then in the possession of [appellant]."
Appellant also argues that the inference that notice was not sent is supported by numerous inconsistencies with regard to the sale of her car. Appellant's argument refers to an annotation written by Maupin on a copy of the complaint filed against appellant in the Fairfield Municipal Court, and to statements made by Maupin both in his deposition and in his affidavit dated September 18, 1995.
Maupin's annotation reads as follows: "Dismissed — Car Repo'd. — Paid in Full. 2-15-94 [signed] Maupin." In his deposition, Maupin testified that Performance's action against appellant in the Fairfield Municipal Court was dismissed because "[o]nce the vehicle was sold and Performance * * * recovered the majority of the money, [he] felt it was fruitless for [them] to continue." Maupin's affidavit states in relevant part that:
 9. On February 15, 1994, I made a notation on my copy of the Small Claims Complaint that had been filed in the Fairfield Municipal Court that I deemed the account paid in full. I anticipated that we would receive a sufficient amount from the resale of the vehicle, since that vehicle had been repossessed and that it would be futile to continue further legal proceedings against Ms. Brown. By noting that I deemed the account "paid in full" on February 15, 1994, I did not mean that we had actually received payment. In fact, the vehicle had not been sold and was still in our possession as to that time. Rather, I simply felt we would gain enough from the resale that legal proceedings would be unnecessary.
After reviewing the foregoing statements, we find that they neither contradict nor are they inconsistent with one another. We further find that these alleged inconsistencies do not support an inference that the notice was never sent. We therefore hold that the trial court did not err in failing to make such an inference.
We now turn to appellant's argument that if sent, the notice was defective because Performance "sold the car before the stated date and the method of sale was not commercially reasonable."
We note at the outset that we fail to see how appellant's car "was sold before the stated date." The February 9, 1994 notice to appellant states that "[i]f you fail to pay the full amount in arrears within (20) days, your vehicle will be sold * * *." The record clearly shows that appellant's car was sold to Eric Fuhrman on March 14, 1994.[2] Not counting February 9 or March 14, we calculate that the car was sold twenty-two working days after the notice was sent on February 9, 1994. We therefore find that contrary to appellant's argument, Performance did not sell her car "before the stated date."
Appellant argues that based on Maupin's deposition and the language of the notice, the notice was for a public sale and thus in violation of R.C. 1309.47. We disagree.
R.C. 1309.47(C) provides that a secured party can dispose of collateral by holding a public sale or by holding a private sale. "If the secured party chooses to conduct a public sale * * * the debtor must receive reasonable notice of the time and place of the public sale * * *. If the secured party undertakes a private sale, * * * the debtor must receive notice of the time after which a private sale is to occur * * *." In re Webb (S.D. Ohio 1975), 17 U.C.C.R.S. 627, 630.
The operative words of the notice to appellant are as follows: "If you fail to pay the full amount in arrears within (20) days, your vehicle will be sold to the highest bidder and the proceeds applied to your acciout [sic]." Contrary to appellant's argument, we find that appellant was advised by the notice that her car was to be sold at a private sale. While the notice did not use the words "private sale," it clearly notified appellant of the time after which a sale would be made, that is, twenty days after the notice was sent. In addition, in an affidavit dated August 26, 1996, Maupin stated that the Cincinnati Auto Action where he first tried to sell appellant's car was a private auction. In an affidavit dated September 18, 1995, Maupin stated that the car was subsequently sold to Fuhrman "at a private sale."
We are mindful of Maupin's following statements made during his deposition:
[by Richard L. Hurchanik, counsel for appellant]
 Q. Is Eric Fuhrman associated with the Performance Auto Center, Inc.?
A. No, a private individual.
Q. Was it done through an auction?
 A. It was presented to the Cincinnati Auction, and Mr. Fuhrman was at the auction, and the amount of the sale, I didn't feel was sufficient, and it came back and we negotiated into what was a sufficient amount, and that is what he paid.
Q. Was it a dealer/owner sale?
A. A public auction.
Q. Through a dealer?
 A. You do a repo before the sale, but it was a public like auction. (Emphasis added.)
We find, however, that Maupin's foregoing statements, which are at the least inconsistent, do not affirmatively demonstrate the existence of genuine issues of material fact, especially in light of the clear language of the notice.
Appellant also argues that the notice was defective because the method of sale was not commercially reasonable. We disagree.
R.C. 1309.47(C) requires that the sale of repossessed collateral by a secured party be commercially reasonable. "Price alone is not determinative of `commercial reasonableness' in the sale of collateral after a debtor's default. Every aspect of the disposition must be reviewed in addition to the price including the method, manner, time, place and terms." Huntington Nat. Bank v. Elkins (1980), 53 Ohio St.3d 79, 80.
While the Revised Code does not clearly define the term "commercially reasonable," R.C. 1309.50(B) lists factors to contemplate in determining whether a sale is commercially reasonable:
 The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable matter. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner.
Appellant contends that the sale of her car for $479.52 was not commercially reasonable because the car was worth of $2,500. We disagree. As previously stated, a party who opposes a motion for summary judgment may not rest upon allegations. Although appellant stated in an affidavit dated August 23, 1995 that her car was worth $2,500 at the time it was repossessed, the record is devoid, with the exception of appellant's mere allegation, of any evidence, such as the blue book or an expert's affidavit, regarding the value of appellant's car. Nor does appellant explain how she arrived at that figure.
The record shows however that, in compliance with R.C. 1309.47, Performance sent a notice to appellant of its intent to sell her car if she did not pay the full amount in arrears within twenty days, that appellant did not respond to the notice, and that the notice provided that appellant's car would be sold to the highest bidder. The record also shows that Maupin tried to sell appellant's car at the Cincinnati Auto Auction but felt that the sale price was too low. Appellant's car, a 1985 Oldsmobile, was eventually sold to Fuhrman on March 14, 1994. There is no evidence in the record as to the condition of the car.
In light of all of the foregoing, we find that Performance's sale of appellant's car was commercially reasonable. Appellant's first assignment of error is overruled.
Appellant's second assignment of error reads as follows:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE FIRST MOTION FOR SUMMARY JUDGMENT IN THAT THE PLAINTIFF MADE ALL HER PAYMENTS AND WAS NEVER GIVEN JUSTIFICATION FOR "LATE PAYMENTS" OTHER THAN THAT INDICATED ON HER PAYMENT BOOK AND THUS OWED THE DEFENDANT STAR BANK OR DEFENDANT PERFORMANCE NOTHING, OR MUCH LESS THAN THE $747.43 DEMANDED.
Appellant argues that it was error for the trial court to grant appellees' first motion for summary judgment when she had made all forty-eight payments as required under the financing agreement and when "Star Bank's mere argument that `she owe[d] a payment' [was] insufficient to overcome [appellant's] affidavit (with supporting documents) that she paid 48 payments."
Appellant's argument that because she had made all forty-eight payments, it was error to grant summary judgment in favor of appellees is meritless, albeit novel. One cannot seriously argue that as long as a debtor pays the exact number of required payments under the loan agreement, the debtor has automatically satisfied his obligation to repay the loan. Such argument does not take into account accrual of interest and late fees when the payments are not made, are late or "bounce."
A thorough review of the record shows that as early as October 1989, appellant was late in her payments. While some of her late payments included the $10 late charge appellant had agreed to pay under the financing agreement, most of appellant's late payments did not include the late charge. None of appellant's late payments accounted for accrual of interest on past due payments. Carol Beyer ("Beyer"), a manager at Star Bank's installment loan department, testified at her deposition that "[i]nterest continues to accrue on your unpaid balance" thirty days beyond due date. The record also shows that at least two checks bounced for nonsufficient funds.
On December 13, 1991, appellant made a $50 payment to defer the December 25, 1991 payment. In her affidavit, Beyer stated that appellant received a one month holiday extension in return. The record shows however, and appellant so testified, that the January 25, 1991 payment was not paid until September 28, 1993. The payment did include the $10 late charge.
Appellant testified that on or before October 1991, she started receiving collection calls from Star Bank because she was late on her payments. In her deposition, Beyer confirmed that appellant's account was repeatedly in and out of collection. Appellant testified that she did not think she ever became completely current once she became late on her payments. Yet, appellant testified that she made all of the forty-eight payments. Appellant admitted, however, that she did not always make her payments on or before they were due, that more than once, she had night deposited money order payments because a check had bounced, and that while she paid the $10 late charge "when [she] was contacted by Star Bank," she never paid the accrual of interest when her payments were late.
With regard to accrual of interest and the $10 late charge, the financing agreement states in relevant part:
 [You] promise to pay the order of Star Bank, N.A., * * * amount shown as the Total Payments * * * with interest after maturity at the rate provided in this Installment Loan Note and Security Agreement [21%], or the highest lawful rate applied to any balance remaining due.
* * *
 LATE CHARGE: If a payment is late, you will be charged $10.00.
* * *
 YOU PROMISE TO PAY: * * * The Total of Payments in the number and amount of monthly payments and on the due dates * * *.
(Emphasis added.)
After thoroughly reviewing the record, we find that while appellant may have made all of the forty-eight payments as required under the financing agreement, she clearly did not comply with the contractual terms of the agreement or make payment of all sums due thereunder. We therefore hold that the trial court did not err in granting appellees' first and joint motion for summary judgment. Appellant's second assignment of error is overruled.
Appellant's third assignment of error reads as follows:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION SINCE REASONABLE MINDS WOULD MAKE INFERENCES THAT WOULD NOT SUPPORT THE COURT'S ENTRY GRANTING SUMMARY JUDGMENT.
In her deposition, appellant testified that the missing check No. 436 was a car payment. The record shows that on November 3, 1989, appellant made a payment in cash (allegedly payment No. 5) in the amount of $266.05. Exhibit C to appellant's affidavit dated October 21, 1995 is a letter to appellant's counsel from Star Bank stating that "[o]n Oct. 19th our research department informed me that the film which had the copy of the check for $266.05, which cleared [appellant's] account on Nov. 3rd, 1989, had been losted [sic]."
Appellant argues that the foregoing facts give a reasonable inference that check No. 436 was indeed a car payment and that as a result, it was error for the trial court to grant summary judgment in favor of appellees. While we agree that the foregoing facts reasonably permit an inference that check No. 436 was a car payment, we nevertheless find that the same facts do not permit an inference that appellant was in compliance with the contractual terms of the financing agreement as previously discussed under appellant's second assignment of error. For purposes of brevity, we incorporate our treatment of appellant's arguments under her second assignment of error under this assignment of error.
Appellant also argues that since she had made all forty-eight payments, it was an abuse of discretion for the trial court to dismiss her claims for slander and unjust enrichment. We disagree.
"The doctrine of `unjust enrichment' is that a person shall not be allowed to profit or enrich himself inequitably at another's expense." Freedline v. Cielensky (1961), 115 Ohio App. 138,142. In light of the fact that appellant's account was clearly delinquent and that appellant had not complied with all of the contractual terms of the financing agreement at the time the account was assigned to Performance or thereafter, we find that the trial court properly dismissed appellant's claim of unjust enrichment.
With regard to appellant's slander claim, her complaint stated that "Star Bank defamed [appellant] when it told * * * Performance and * * * Heritage and others that [appellant] still owed * * * Star Bank an amount certain of monies on said account, when said story was not true."
R.C. 2739.01 states in relevant part:
 In an action for a libel or slander, it is sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff. If the allegation is denied, the plaintiff must prove the facts, showing that the defamatory matter was published or spoken of him.
R.C. 2739.02 in turn states in relevant part:
 In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. Proof of the truth thereof shall be a complete defense. (Emphasis added.)
See, also, Ed Schory Sons, Inc. v. Soc. Natl. Bank (1996),75 Ohio St.3d 433, 445.
In the case at bar, it is undisputed that, while appellant may have made all of the forty-eight payments, she not only did not always pay the $10 late charge whenever her payments were late, as required under the financing agreement, she also never paid the accrual of interest on past due payments as required under the financing agreement. Under these circumstances, we find that the trial court properly dismissed appellant's claim of defamation. Appellant's third assignment of error is overruled.
Appellant's fourth assignment of error reads as follows:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AND THE UNDERLYING PRINCIPLE OF THE DOCTRINE OF RES JUDICATA WHEN IT ALLOWED THE PLAINTIFF TO PROCEED ON PLAINTIFF'S COUNT II AND THEN LATER DISMISSED THAT COUNT BECAUSE OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT.
Appellant argues that although res judicata "technically does not apply" to the case at bar, "the principle does." Appellant argues that since the trial court denied appellees' first motion for summary judgment with regard to appellant's conversion claim and since no new evidence was presented in appellees' renewed motion for summary judgment, the trial court could not grant summary judgment on her conversion claim and thus abused its discretion in doing so. Appellant's argument has no merit.
It is well-established that a trial court's order granting summary judgment upon the whole case as to fewer than all the claims is a final appealable order only upon an express determination that "there is no just reason for delay" until judgment is granted as to all the claims. Whitaker-Merrell Co. v. Geupel Constr. Co. (1972), 29 Ohio St.2d 184, 187; Civ.R. 54(B), 56(D).
In the case at bar, while the trial court's November 13, 1995 entry granted in part and denied in part appellees' joint motion for summary judgment, it did not state that there was no just reason for delay. It thus follows that the entry was not a final appealable order but rather an interlocutory entry subject to revision at any time before the entry of final judgment on September 16, 1996. Maxey v. Lenigar (1984), 14 Ohio App.3d 458,459. As the Eighth District Court of Appeals held in Maxey:
 If the trial court errs in overruling a motion for summary judgment, it is not necessary that that court wait until the judgment is reversed upon appeal, but, instead, the court may correct its error either upon a motion for reconsideration or upon a new motion for summary judgment predicated upon the same law and facts.
 On the other hand, when considering the second motion for summary judgment predicated upon the same basis, the trial court should reexamine the evidence submitted in connection with the first motion for summary judgment, as well as any additional evidence presented, and, predicated upon the totality of proper evidence pursuant to Civ.R. 56(C), determine whether or not in connection with the second motion for summary judgment reasonable minds could come only to an adverse conclusion to the party against whom the motion is made after construing all the evidence most strongly in favor of that party.
Id. at 459-460.
We therefore hold that the trial court did not err in allowing appellant to proceed on her conversion claim and then later dismiss it by granting appellees' renewed motion for summary judgment. Appellant's fourth assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] Appellant alleges that her car was repossessed on January 17, 1994. Performance alleges that the car was repossessed on February 7, 1994.
[2] The purchase agreement by which Fuhrman bought appellant's car from Performance, the odometer disclosure, and the warranty disclaimer all show that the vehicle was sold to Fuhrman on March 14, 1994.