This appeal and cross-appeal arise from an underinsured motorist coverage dispute. For simplicity, the parties shall be referred to by their proper names.
Phyllis Washington, individually, as administratrix of the estate of Dion Washington, and as parent and guardian of Danielle Washington, commenced this action in the common pleas court. The complaint alleged that pedestrian Dion Washington, who was her husband and Danielle's father, was struck and killed on February 26, 1997 by an underinsured motorist. The complaint also alleged that the tortfeasor's insurer, State Farm, surrendered its $50,000 per person/$100,000 per accident policy limits, the balance of which was awarded by the probate court solely to Phyllis Washington.
Phyllis Washington thereafter sought to recover underinsured motorist benefits from her own insurer, Citizens Security Mutual Insurance Company (Citizens), on a policy with identical policy limits of $50,000 per person/$100,000 per accident. She had first applied for the policy on November 9, 1994 and was covered by a renewal policy at the time of decedent Dion Washington's death. The complaint sought a declaratory judgment against Citizens to recover the policy limits and also added a claim alleging that Citizens acted in bad faith by denying the underinsured motorist claim.
Citizens filed an answer denying the substantive allegations of the complaint and raised affirmative defenses asserting that no further recovery was due on its underinsured motorist policy because (1) Phyllis Washington had already recovered against the tortfeasor's liability insurer with the identical $50,000 per person policy limits, and (2) Phyllis Washington made false statements and misrepresentations in her application to obtain the policy. Citizens also filed a counterclaim for a declaratory judgment that it was not liable on the policy for the same reasons.
Daughter Danielle Washington, who was represented by separate counsel, filed a motion for declaratory judgment. The motion argued Danielle was entitled to collect from Citizens because (1) she did not collect from the tortfeasor, (2) the Am.Sub.S.B. 20 (Senate Bill 20") amendments to R.C. 3937.18, the underinsured motorist statute, effective two weeks before the date of the application for insurance from Citizens, were unconstitutional, and (3) the term uninsured motorist coverage was ambiguous.[1] Citizens filed a brief in opposition and cross-motion for summary judgment. Citizens argued that the Senate Bill 20 amendments to R.C. 3937.18 applied and it was not liable because its underinsured policy limits were identical to the tortfeasor's policy limits, which were already fully paid. Citizens also argued that it was entitled to judgment on the bad faith claim because no claim for underinsured motorist benefits existed under its policy.
Danielle Washington filed a brief in opposition to Citizens' motion for summary judgment. The brief reiterated the argument she made in support of her motion for declaratory judgment and argued that the bad faith claim, supported by an affidavit from former counsel, raised a question of fact for a jury. Phyllis Washington filed two separate one-sentence documents which incorporated Danielle Washington's filings.
On September 3, 1998, the trial court granted Danielle Washington's motion for declaratory relief. It held Citizens' cross-motion for summary judgment regarding coverage to be moot and granted summary judgment in favor of Citizens on the bad faith claim. This ruling, however, was interlocutory and did not resolve all pending issues. Phyllis Washington's claims on the policy and Citizens' counter-claim to declare the policy void remained unadjudicated.
Danielle Washington thereafter filed a motion for summary judgment on Citizens' counterclaim to invalidate the policy.[2] Her motion argued that any false statements made by her mother Phyllis to obtain insurance from Citizens did not invalidate the policy and that Citizens never sought to cancel the policy before the decedent's death. Phyllis filed a separate motion for summary judgment on the counterclaims which repeated these same arguments. Danielle's motion for summary judgment also argued that she was innocent and that any wrongdoing by her mother should not defeat her rights under the policy.
Citizens filed a brief in opposition to the motions for summary judgment and filed a cross-motion for summary judgment on its counterclaim. Citizens' motion for summary judgment was likewise supported by evidence for the first time. This motion argued that Phyllis Washington made false statements when applying for and renewing her policy with Citizens.
The November 9, 1994 application stated that Phyllis was divorced, did not list decedent Dion Washington as a member of her household, and answered that no one in her household had been convicted of a drunken driving offense, other felony, or serious conviction and that there were no other vehicles in the household. The renewal form she signed one year later likewise did not disclose that decedent Dion Washington was a member of her household.
The day before Phyllis Washington's original application was completed, decedent Dion Washington had been arrested for driving under the influence, driving with a prohibited breath alcohol concentration, and weaving. Further investigation revealed that Dion Washington, under an alias, had been charged with grand theft of a motor vehicle and possession of criminal tools, before he pleaded guilty to attempted possession of criminal tools pursuant to a plea bargain. A Citizens' underwriter testified that the company would not have issued the policy to Phyllis Washington if she had disclosed these drunk driving charges and criminal convictions.
Finally, Citizens also submitted another false application which Phyllis Washington completed and previously submitted to a different insurer. On that application also, Phyllis Washington failed to disclose that Dion Washington resided with her.
Citizens argued that Phyllis Washington's false statements violated the terms of the conditions section of its policy. Part F of the General Provisions provides in pertinent part as follows:
 FRAUD We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.
(Id. at p 10.) Citizens also argued that the innocent spouse doctrine, which daughter Danielle Washington sought to invoke, did not apply when the policy was procured through fraud or misrepresentation.
On February 4, 1999, following additional briefing by Danielle Washington and Citizens and after reviewing all the substantive motions previously filed in the case, the trial court granted judgment in favor of Citizens. The court also specifically denied Danielle Washington's motion for summary judgment. The court later issued orders expressly entering final judgment and disposing of all other potential claims pending among the parties.
The Washingtons filed a joint notice of appeal and were subsequently permitted by this court to file an amended notice of appeal. Citizens filed a notice of cross-appeal. We shall address the assignments of error in a different order than briefed by the parties.
 I
The central issue in this case is whether an insured is entitled to recover underinsured motorist benefits from its own insurer when it already recovered the policy limits from the tortfeasor's insurer and its own underinsured motorist policy has the identical policy limits. This issue is addressed in the Washingtons' fifth through seventh assignments of error.
The law governing the recovery of uninsured and underinsured motorist benefits has undergone considerable development in the last several years. See Powers v. Nationwide Mut. Fire Ins. Co. (Dec. 6, 1999), Mahoning App. No. 97CA219, unreported at pp. 3-4 (recounting the history of R.C. 3937.18, the uninsured and underinsured motorist insurance coverage statute, and judicial opinions from Hill v. Allstate Ins. Co. (1990), 50 Ohio St.3d 243, which was overruled by Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, which, in turn, was legislatively overruled by Senate Bill 20).
Not surprisingly, courts throughout the state have issued conflicting opinions concerning the effectiveness of the Senate Bill 20 amendments in particular cases. Because of recent pronouncements by the Ohio Supreme Court and other appellate districts, however, this court has an advantage not given to the trial court or parties in the case at bar. Under the circumstances of this case, the trial court properly found that plaintiff could not recover underinsured motorist benefits under the Citizens policy.
The Washingtons' fifth assignment of error[3] challenges the trial court's determination that the Senate Bill 20 amendments precluded recovery in the case at bar. The Ohio Supreme Court most recently addressed this issue concerning the effectiveness of the Senate Bill 20 amendments in Wolfe v. Wolfe (2000), 88 Ohio St.3d 246. The Wolfe Court specifically held that the statutory law in effect on the date of issue of each new policy is the law to be applied in a particular case. Id. at 250 (Emphasis in original). The application of the Wolfe decision to the case at bar is simple because both the initial policy and all subsequent (that is, new) policies were entered into after the October 20, 1994 effective date of the Senate Bill 20 amendments.
The record unambiguously reveals that Phyllis Washington did not apply for the Citizens insurance policy until November 9, 1994. This date was two weeks after the October 20, 1994 effective date of the Senate Bill 20 amendments. Thus the amendments were effective at the time of her original policy. Moreover, the guaranteed two-year term of the original policy would have expired on November 9, 1996. If the amendments were not effective earlier, they would otherwise have become effective during the next two-year guaranteed policy term beginning on November 10, 1996. The automobile accident for which the Washingtons seek underinsured benefits occurred on February 26, 1997.
Courts applying the Senate Bill 20 amendments in R.C. 3937.18(A)(2) and (H), in cases involving multiple claimants and wrongful deaths, have determined that insureds are precluded from recovering from their own underinsured motorist carrier after the tortfeasor's liability insurance carrier has already paid the decedent's estate policy limits identical to those in the underinsured motorist policy from which recovery is sought. E.g., Brown v. Saliba (June 28, 2000), Noble App. No. 264, unreported; Littrell v. Wigglesworth (Mar. 13, 2000), Butler App. Nos. CA 99-05-092 and CA 99-08-141, unreported; Kirby v. Pioneer Ins. Co. (Mar. 22, 1999), Warren App. No. CA 98-09-120, unreported; and Smock v. Hill (1999), 132 Ohio App.3d 478. In the case at bar, it is undisputed that the torfeasor's insurer paid its policy limits of $50,000 to the decedent's estate. It is equally undisputed that the $50,000 per person liability policy limit paid to the estate is equal to the $50,000 per person underinsured motorist policy limit from which further recovery is sought.
The Washingtons argue that Estate of Fox v. Auto-Owners Ins. (June 12, 1998), Darke App. No. 1456, unreported (citing Motorists Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362), dictates a contrary result. The trial court followed this line of reasoning in its initial interlocutory order, but abandoned it at final judgment. The opinion in Fox reveals that the decedent's estate in that case received from the tortfeasor's liability insurer only $92,500. This payment was not equal to the $100,000 per person/$300,000 per accident underinsured motorist policy limits from which recovery was sought. Because the $92,500 paid to the estate was less than the $100,000 per person underinsured motorist policy limit, the policy holder had a claim for underinsured motorist benefits.
The Second District Court of Appeals, which issued the opinion in Fox, has subsequently distinguished the case on precisely this basis. See e.g., Clark v. Scarpelli (Dec. 17, 1999), Montgomery App. No. 17833, unreported at pp. 3-4; and Horstman v. Cincinnati Ins. Co. (June 26, 1998), Montgomery App. No. 16949, unreported at p. 2. The record in the case at bar reveals that, unlike Fox, the decedent's estate was paid the tortfeasor's policy limits, which were equal to the underinsured motorist coverage limits from which additional recovery is sought.
More importantly, however, we believe that the Senate Bill 20 amendments to R.C. 3937.18 were designed to preclude additional recovery under these circumstances. See Littrell v. Wigglesworth, supra; Smock v. Hall, supra. Contrary to the Washingtons' argument, we do not believe that the General Assembly was required to specify by name each Supreme Court case it sought to overturn by adopting the Senate Bill 20 amendments. Accordingly, the Washingtons' fifth assignment of error is overruled.
The Washingtons' sixth assignment of error[4] asserts in general that the Senate Bill 20 amendments are unconstitutional. Specifically, the Washingtons allege that the amendments violate the one-subject rule, due process and their right to a remedy, as well as improperly limit constitutionally protected damages for wrongful death actions. Each of these arguments has already been rejected and we likewise do not find them to be persuasive in the case at bar.[5]
For example, the Supreme Court rejected the Washingtons' one-subject rule argument in Beagle v. Walden (1997), 78 Ohio St.3d 59,61-62. Their second argument concerning due process and their right to a remedy was rejected by the plurality in Beagle. The argument has likewise been rejected in, for example, Lyles v. Glover (Mar. 27, 2000), Allen App. No. 1-99-104, unreported at p. 2; Haddad v. State Farm Mut. Auto. Ins. Co. (Feb. 28, 2000), Stark App. No. 1999CA00262, unreported at p. 3; Clark v. Forney (1998), 129 Ohio App.3d 844, 845-846; and Ott v. Borchardt (1998), 127 Ohio App.3d 152, 156, review den. (1998),82 Ohio St.3d 1474 . Finally, the Washingtons' third argument concerning improper limitation of wrongful death damages has likewise been rejected in Ackerman v. State Farm Mut. Auto. Ins. Co. (Dec. 10, 1999), Hamilton App. No. C-990332, unreported at pp. 3-4; Clark v. Forney, supra; and Waite v. Progressive Ins. Co. (1998),128 Ohio App.3d 344, appeal dismissed, (1999), 85 Ohio St.3d 1226. We agree with the consistent reasoning of these cases rejecting these constitutional arguments. Accordingly, the Washingtons' sixth assignment of error is overruled.
The Washingtons' seventh assignment of error[6] contends that the term uninsured motorist coverage is ambiguous and must be construed in their favor. The sole support for this three-paragraph argument is a concurring opinion in Beagle, supra. The Washingtons have not cited any authority which has adopted this argument or held that the term uninsured motorist coverage in either the R.C. 3937.18 statutory language or an insurance policy provision is ambiguous. While the scope of underinsured motorist coverage has been disputed as discussed above, the dispute is not whether the term uninsured motorist coverage is ambiguous. Nor have the Washingtons shown any ambiguity in this phrase. Accordingly, the Washingtons' seventh assignment of error is overruled.
 II
The Washingtons' fourth assignment of error[7] argues that the trial court improperly granted summary judgment against them on their bad faith claim. The Third District Court of Appeals has rejected this argument, however, under strikingly similar circumstances in State Farm Mut. Ins. Co. v. Reinhart (1996), 114 Ohio App.3d 625. The Reinhart court held that an underinsured motorist carrier had reasonable justification for denying payment on its policy to preclude a bad faith claim when its insured had already recovered the identical policy limits from the tortfeasor's insurer.
Reinhart occurred early when the law governing recovery of underinsured motorist benefits was undergoing change. Originally, Hill v. Allstate Ins. Co. (1990), 50 Ohio St.3d 243, denied recovery. Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, however, overruled Hill and permitted recovery. The insurer in Reinhartwas held not liable on the bad faith claim even though it had denied an underinsured motorist claim for which it was ultimately held liable.
The Washingtons' bad faith claim, however, was much more tenuous in the case at bar. As discussed above in Section I, Citizens has no liability on the underinsured motorist policy and it properly denied coverage for the claim. Under the circumstances, the Washingtons have not shown that the denial of coverage constituted actionable bad faith or that the trial court improperly granted summary judgment against them on this claim.
Accor the Washingtons' fourth assignment of error i overruled.
 III
The parties make various other arguments which we need not address. The Washingtons' first, second, and third assignments of error[8]
relate to Phyllis Washington's alleged fraud in procuringdingly, the insurance policy from Citizens in the case at bar. Because the policy does not provide for recovery of underinsured motorist benefits, however, as discussed in Section I above, these remaining arguments are moot.
Even if the policy were valid and enforceable as the Washingtons argue, they are not entitled to collect any underinsured motorist benefits, because the policy limits are equal to the tortfeasor's limits, which have already been paid. As a result, in light of our disposition of their fifth through seventh assignments' through third assignments of error pursuant to App.R in Section I, we 12(A)(1)(c).
Finally, Citizens filed a notice of cross-appeal, but did not specifically raise any assignment of error. Its brief responds to the Washingtons' arguments and seeks to prevent reversal of the trial court's judgment by raising various legal arguments to explain why it should prevail. Because the trial court entered final judgment in Citizens' favor and we find no reversible error, however, we need not address its arguments. See Pang v. Minch (1990), 53 Ohio St.3d 186,199-200.[9]
Although the trial court may have originally reached an incorrect conclusion concerning liability under the policy as discussed in Section I, its ruling was interlocutory and the court could properly reconsider and correct its decision at any time before entering final judgment. Maxey v. Lenigar (1984), 14 Ohio App.3d 458.
The judgment of the trial court in favor of Citizens and against the Washingtons is affirmed.
Judgment accordingly.
It is ordered that appellee/cross-appellant recover of appellant/cross-appellee its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
 _____________________ KARPINSKI, P.J.:
KENNETH A. ROCCO, J., and ANNE L. KILBANE, J., CONCUR.
[1] The only evidence supporting Danielle's motion was an affidavit from former counsel describing recovery from the tortfeasor and the probate court order awarding the balance after expenses to Phyllis Washington.
[2] On the same date, she filed deposition testimony for the first time in the case.
[3] This assignment of error states:
 THE TRIAL COURT ERRED IF IT DID, IN FACT, REVERSE ITS INITIAL ORDER AND DENY THE WASHINGTONS' CLAIM FOR DECLARATORY RELIEF ON THEIR UDM CLAIM.
[4] This assignment of error states:
 THE LAW OF SAVOIE CONTROLS THIS CASE SINCE S.B. 20 IS UNCONSTITUTIONAL.
[5] As a threshold matter, courts have recognized that they lack jurisdiction to issue declaratory judgments concerning these constitutional arguments when, as in the case at bar, the party seeking such a declaration has not properly served the Ohio Attorney General as required by R.C. 2721.12. E.g., Kirby v. Pioneer Ins. Co., supra at p. 5.
[6] This assignment reads: THE TRIAL COURT ERRED IN NOT HOLDING THE TERM UNDERINSURED MOTORIST COVERAGE TO BE AMBIGUOUS, THEREBY ENTITLING THE WASHINGTONS TO COLLECT THE $100,000 PER ACCIDENT UDM LIMITS.
[7] The fourth reads:
 THE TRIAL COURT ERRED IN DISMISSING THE WASHINGTONS' BAD FAITH CLAIM.
[8] The Washingtons' first, second as third assignments of error follow:
 THE TRIAL COURT ERRED IN RULING THAT PHYLLIS WASHINGTON LIED ON HER APPLICATION AND IN VOIDING THE POLICY AB INITIO WHEN SHE DENIED EVER SIGNING THE APPLICATION OR HELPING THE AGENT COMPLETE IT.
 THE TRIAL COURT ERRED IN NOT GRANTING THE WASHINGTONS' MOTION FOR SUMMARY JUDGMENT ON CITIZENS' COUNTERCLAIM FOR FRAUDULENT MISREPRESENTATION.
 THE TRIAL COURT ERRED IN NOT GRANTING DANIELLE'S MOTION FOR SUMMARY JUDGMENT ON CITIZENS' COUNTERCLAIM SINCE DANIELLE, AS AN INNOCENT INSURED, IS NOT CHARGEABLE WITH PHYLLIS' ALLEGED MISSTATEMENTS.
[9] Pang recognized the better method for pursuing such a goal was to file cross-assignments of error pursuant to R.C. 2505.22, rather than to file a cross-appeal. Id. at 199 n. 6.