RANKIN, APPELLEE, *v.* SANDER, APPELLANT.

(No. 7807—Decided November 23, 1953.)

*Messrs. Peck, Shaffer & Williams* and *Mr. Leonard Gartner,* for appellee.

*Messrs. McIntosh, Moore & Katz,* for appellant.

MATTHEWS, P. J.   This is an appeal from a judgment for the plaintiff for the amount of damage to his automobile, resulting from a collision between it and an automobile operated at the time by the defendant, who at the time was a police officer of the city of Cincinnati.

The bill of exceptions shows that the following constituted all the evidence introduced at the trial:

"Plaintiff, to maintain the issues on his part, introduced the following evidence through himself and a passenger in his car named Margaret McCarthy; that they had driven in the car northwardly on Durrell avenue; that they had made a right hand turn on Gilbert avenue; that as they were going in a generally eastwardly direction on Gilbert avenue after having made the turn, they saw a vehicle coming toward them rapidly; that he pulled the car as far over to the right side as he could possibly do so and stopped; that he saw a red flashing light on the vehicle coming to him; that the vehicle put on its brakes and slid into the car of plaintiff; damaging it in the sum of $500.58; that the car that was approaching him and collided with his car was a police car operated by a policeman in full uniform.

"Defendant maintaining issues on his part introduced that he was a police officer of the city of Cincinnati; that he received a radio call while he was driving southwardly on Gilbert avenue to go to 300 McGregor avenue on a call of trouble; that he had his red light flashing; that his siren was going when he collided with the automobile of the plaintiff.

"The police teletype message No. J-4781, showing a call to patrolman Albert Sander directing him to go to 300 McGregor avenue on a 'Trouble Run' was introduced in evidence."

It is manifest that whether the defendant is liable is dependent upon the proper construction of Section 3714-1, General Code, in effect at that time, which provided that:

"Every municipal corporation shall be liable in damages for injury or loss to persons or property and for death by wrongful act caused by the negligence of its officers, agents, or servants while engaged in the operation of any vehicles upon the public highways of this state under the same rules and subject to the same limitations as apply to private corporations for profit but only when such officer, agent or servant is engaged upon the business of the municipal corporation.

"Provided, however, that the defense that the officer, agent, or servant of the municipality was engaged in performing a governmental function, shall be a full defense as to the negligence of members of the police department engaged in police duties, and as to the negligence of members of the fire department while engaged in duty at a fire or while proceeding toward a place where a fire is in progress or is believed to be in progress or in answering any other emergency alarm. And provided, further, that a fireman shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle in the per-.

formance of a governmental function and provided further that a policeman shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle while responding to an emergency call.''

While this section was declared to be constitutional in *McDermott* v. *Irwin,* 148 Ohio St., 67, 73 N. E. (2d), 86, it has never, so far as we are advised, been subjected to a critical analysis to determine the exact meaning of an ''emergency'' that would relieve firemen and policemen from liability for negligence in the operation of motor vehicles. In *Staudenheimer* v. *City of Newark,* 62 Ohio App., 255, 23 N. E. (2d), 845, it was held that the municipality was not liable for the negligence of firemen in operating a fire truck en route to an engine house, other than the one at which it was usually stationed, to replace a truck which had been to a fire. It was held that the replacing truck was being operated in a governmental capacity and was answering an emergency call.

Now it is clear that by the first paragraph of this section the Legislature intended to waive for municipal corporations their sovereign right and to place them on the same plane as private corporations as to liability for wrongful acts caused by negligence of their officers, agents, or servants while operating vehicles upon the public highways when such officers, agents, or servants were engaged upon the business of the municipal corporation. And standing alone and unmodified, it would impose liability for negligence upon every municipal officer and employee engaged in the operation of a vehicle upon the public highways on municipal business.

The purpose of the first sentence of the second paragraph is to continue municipal exemption from liability for acts of members of the police and fire depart-

ments under certain circumstances. As to members of the police department the defense that the officer, agent, or servant was engaged in a governmental function was available in all cases when the officer, agent or servant was operating the vehicle while ''engaged in police duties,'' and as to members of the fire department when they were ''engaged in duty at a fire or while proceeding toward a place where a fire is in progress or is believed to be in progress or in answering any other emergency alarm.''

It is to be noted that the defense of governmental function available to municipalities as to acts of members of the fire department is limited to instances of emergencies, but no such limitation is expressly made an element of the defense of governmental function based on acts of members of the police department. The defense is established on proof that the officer, agent, or servant was engaged in police duties. The reason for making this distinction probably results from the fact that policemen are public officers, deriving their authority from and representing the sovereign in enforcement of the law and preserving public tranquility, and, are, therefore, performing a governmental function that has been recognized as such from most ancient times.

So far as we know, the decisions have been in harmony on the status of the police department (*Bell* v. *City of Cincinnati*, 80 Ohio St., 1, 88 N. E., 128, 23 L. R. A. [N. S.], 910; *Aldrich* v. *City of Youngstown*, 106 Ohio St., 342, 140 N. E., 164, 27 A. L. R., 1497; but the same harmony is not found in cases involving fire departments (*Fowler, Admx.*, v. *City of Cleveland*, 100 Ohio St., 158, 126 N. E., 72, 9 A. L. R., 131; *Frederick, Admx.*, v. *City of Columbus*, 58 Ohio St., 538, 51 N. E., 35). That this exemption from liability for the acts of officers performing customary police duties exists in most jurisdictions is made manifest by the numerous

citations to the text of 38 American Jurisprudence, 317, Section 620, while the scope of the exemption for acts of members of fire departments has occasioned a plethora of contrary decisions. In 38 American Jurisprudence, 322, Section 623, at page 325, it is said:

"Some cases make the qualification to the general rule that to excuse the municipality from liability, the act complained of must have been incident to the fire service. In some jurisdictions, the rule is stated to be that a municipality empowered but not required by law to maintain a paid fire department operates such department in its proprietary rather than governmental capacity, except when the department is engaged in the extinguishment of fires, going to and from the scenes of such conflagrations, òr in testing equipment for use on such occasions."

So it seems that the Legislature considered it wise to mark out more definitely the field of nonexemption in operating a fire department vehicle than was required in relation to the police department.

Now, notwithstanding the municipality could shield itself from liability while in the performance of a governmental function, the officer or agent had no such defense against liability for his torts committed under color of law and was personally liable for his negligence in performing official duties. *United States Fidelity & Guaranty Co.* v. *Samuels,* 116 Ohio St., 586, 157 N. E., 325, 53 A. L. R., 36.

It is against this background that the exemption of firemen and policemen contained in the last sentence of Section 3714-1, General Code, must be interpreted. It will be observed that the governmental function of the fire department as a defense to the municipality is limited to emergencies, whereas, when it is sought to charge the municipality for the acts of a policeman it is a sufficient defense to prove that he was engaged in the routine police duties without proof of any ex-

traordinary circumstances or emergency. Or, perhaps, it could be said that emergencies are normal and routine in the life of a policeman. At any rate, the Legislature, while exempting the municipality from liability upon proof that the policeman was performing police duties at the time, saw fit by the last clause of Section 3714-1, General Code, to grant the policeman a narrower exemption by requiring him to prove that he was engaged at the time in operating the motor vehicle while responding to an emergency call.

From the record, it appears that the defendant was engaged in routine police duties—was patroling his beat—when he received a radio message from his superior officer that there was "trouble" at 300 McGregor avenue and ordering him to proceed to that address. In the department it was described as a "Trouble Run." Upon receiving this order, the defendant ceased patroling his beat and was engaged in answering the call when this collision occurred.

Was defendant at the time responding to an emergency call? He was certainly diverted from that in which he was engaged by the call and the reason assigned was that there was something happening at that precise time at 300 McGregor avenue, justifying the directive to discontinue patroling and to proceed at once to that address. Had this collision occurred while the defendant was engaged in his usual duties of patroling his beat—as he evidently was before this call came—this statute would not have availed as a defense to his negligence. There would have been present no special urgency justifying a disregard of the usual duty to exercise ordinary care, but this call supplied the urgency for swift and immediate action if the purpose of the call was to be accomplished by the enforcement of the law.

The ordinary meaning of "trouble" carries with it the thought of discord, disturbance, and tumult, and

when used in a directive to a police officer undoubtedly connotes a violation of the law. It would seem that if the exemption is to mean anything, it must include a "trouble run" in response to a call of this description. It certainly answers the dictionary definition of the word: "An unforeseen occurrence or combination of circumstances which calls for immediate action or remedy."

We are of the opinion that the defendant at the time was responding to an emergency call and that he was, therefore, not liable for the damage done while so responding.

For these reasons, the judgment is reversed and, as the evidence is uncontradicted, final judgment is entered for the defendant.

*Judgment reversed.*

Ross and HILDEBRANT, JJ., concur.