COMMERCE & INDUSTRY INSURANCE COMPANY, APPELLEE, *v.*
CITY OF TOLEDO ET AL., APPELLANTS;
ABLE WAREHOUSE & DISTRIBUTING COMPANY, APPELLEE.

[Cite as Commerce & Industry Ins. Co. *v.* Toledo (1989),
45 Ohio St. 3d 96.]

(No. 88-577—Submitted April 6, 1989—Decided August 23, 1989.)

*Harland Britz, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, John L. Hopkins, Julius Denenberg, George F. Curran II, John A. Lawson* and *Dana L. Ramsay,* for appellee Commerce & Industry Ins. Co.

*J. Michael Vassar* and *Joseph P. Dawson,* for appellee Able Warehouse & Distributing Co.

*James N. Turner,* for appellant city of Toledo.

*Thomas E. Morgan, Roger C. Post* and *James R. Berendsen,* for appellant Columbia Gas of Ohio, Inc.

*Calfee, Halter & Griswold, John E. Gotherman* and *Stanley J. Dobrowski,* urging reversal for *amicus curiae,* Ohio Municipal League.

H. BROWN, J. This case presents two questions. The first is whether Columbia Gas is entitled to summary judgment. The second is whether Toledo is protected from liability by either the public duty rule or former R.C. 701.02(B). We answer the first query in the affirmative and in response to the second query we find that Toledo was partially but not totally protected by the public duty rule.

I

Appellees claim that Columbia Gas was negligent in (1) failing to investigate whether shutting off gas service would jeopardize the fire protection system, (2) failing to warn representatives of the fire department or Lane that the fire protection system was disabled when gas service was shut off, and (3) failing to promptly restore service to the fire protection system after being called back to the warehouse.

Columbia Gas maintains that it was present at the scene of the fire only to respond to the request of the fire department to shut off gas service. Columbia Gas argues that its primary duty was to obey the orders of the fire department. It fulfilled that duty by shutting off gas service.

Columbia Gas makes a strong argument. Pursuant to statute, the fire department of a municipal corporation has the primary duty to protect lives and property in case of fire. R.C. 737.11. The Ohio Administrative Code and the Toledo Municipal Code place

the fire chief or his authorized representative in charge at the scene of a fire. Ohio Adm. Code 1301:7-1-03(I); Toledo Municipal Code Section 1511:03, F-102.9. One who knowingly hampers "* * * the lawful operations of any * * * fireman * * * engaged in his duties at the scene of a fire * * *" is subject to criminal penalties. R.C. 2917.13(A)(1). Moreover, the inspection and approval of fire prevention systems are the responsibilities of the fire department. Ohio Adm. Code 1301:7-7-04(A)(3); Toledo Municipal Code Section 1511.03, F-103 and F-104. Generally speaking, a gas company is not required to know what gas appliances its customers have installed or are using. *Miller* v. *Gas Service Co.* (1943), 155 Kan. 829, 130 P. 2d 547; see, also, *Transportation Ins. Co.* v. *Clark* (1962), 116 Ohio App. 511, 22 O.O. 2d 346, 189 N.E. 2d 166 (electric company has no obligation to inspect wiring and appliances owned by consumer).

However, Columbia Gas mischaracterizes the scope of its duty. Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff. *Baltimore & Ohio Southwestern Ry. Co.* v. *Cox* (1902), 66 Ohio St. 276, 64 N.E. 119. The existence of duty largely depends on the foreseeability of injury. *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180, 472 N.E. 2d 707, 710; *Gedeon* v. *East Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E. 924. The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that injury to the plaintiff or to those in like situations is the probable result of the performance or nonperformance of an act. *Id.*

Once a common-law duty is found to exist, the fulfillment of that duty is not defined by or limited to a particular course of action. Rather, the defendant is required to exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 285, 21 O.O. 3d 177, 179, 423 N.E. 2d 467, 470; *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 127, 47 O.O. 2d 282, 283, 247 N.E. 2d 732, 734; *Gedeon, supra,* at 338, 190 N.E. at 925; *Payne* v. *Vance* (1921), 103 Ohio St. 59, 67, 133 N.E. 85, 87; *Bellefontaine Ry. Co.* v. *Snyder* (1874), 24 Ohio St. 670. Whether a defendant properly discharged his duty of care is normally a question for the jury. *Gedeon, supra,* at 339, 190 N.E. at 926; *Payne, supra; Blancke* v. *New York Central RR. Co.* (1921), 103 Ohio St. 178, 133 N.E. 484, paragraph three of the syllabus.

A duty running from Columbia Gas to the plaintiff's insured arose once the company was aware or should have been aware that its failure to act could result in harm to the insured. This occurred when Columbia Gas responded to the fire department's request to shut off gas service to the warehouse.[1] At that point, Columbia Gas was obligated to exercise due care under all the circumstances. This case does not turn on the existence of duty. Rather,

---

[1] For purposes of this case we need not decide whether a gas company is a "volunteer" when responding to a fire department's request to discontinue gas service to a burning building. See, generally, *George* v. *Tri-State Gas Co.* (1914), 74 W. Va. 177, 81 S.E. 722. Once the company responds, even if as a volunteer, it is under a duty to exercise due care under the circumstances.

the question is whether Columbia exercised due care. Obedience to fire department instructions ordinarily will be all that due care requires when a gas company responds to a request to shut off gas service at the scene of a fire. However, depending on the circumstances, discharge of the company's duty could require warning the fire department of hazards created by shutting off gas service.

In this case the claim against Columbia Gas is premised in part on conduct falling outside the scope of fire department orders: namely, a failure to warn the fire department that the fire protection system was disabled by the discontinuance of gas service. We must review the pleadings, affidavits and exhibits to see if there is sufficient support for this claim to preclude Columbia Gas from receiving a summary judgment.

Pursuant to a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in a light most favorable to the opposing party. *Wills* v. *Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 188, 26 OBR 160, 161, 497 N.E. 2d 1118, 1120, citing Civ. R. 56(C) and *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267.

In support of its motion for summary judgment, Columbia Gas submitted the affidavits of six of its employees. Taken together, the affidavits indicate that Columbia Gas was unaware before the fire that the warehouse's fire protection system was powered by a gas pump.

In response, appellee Commerce & Industry submitted transcribed phone conversations between representatives of the fire department and Columbia Gas on the evening of the fire.[2] One conversation indicates that Columbia Gas employees discovered the existence of a gas-driven pump shortly after shutting off the gas.[3] The record does not indicate whether the employees knew that the pump supplied pressure to the fire protection system or that the entire system was disabled by shutting off the gas. It cannot be reasonably inferred that Columbia Gas' employees knew or should have known that the firefighting effort would be adversely affected by compliance with the fire department's orders.

The record does not support a claim that the employees of Columbia Gas should have resisted the orders given by the fire department, that they were under an obligation to advise the fire department or that they were

---

[2] Appellee Commerce & Industry also submitted affidavits by its attorneys and several newspaper articles reporting on the fire. The trial court correctly ruled that such material was inadmissible.

[3] "MALE [gas company representative]: Gas Company.

"OP [fire department representative]: Yeah, this is Buehler over at the fire again.

"MALE: Yeah.

"OP: They're telling us at the fire that the gas supply evidently operates the fire pumps out there, so can your crew go back to that scene on Telegraph and check with our Chief Winkel?

"MALE: I'll let you talk to the supervisor.

"OP: Oh, okay.

"MALE: Yeah Fire Board.

"OP: Yeah, this is Beuhler [*sic*] at the Fire Board. We have got just had a request from our Chief Winkel that the gas company return. There's something about returning service to that building or whatever that has to be turned on to operate the fire pumps. Evidently, they're operated through gas. That's all I can tell you.

"MALE: There is a gas auxially [*sic*] engine in there, I think, for water that we found out after we turned everything off."

.

negligent in complying with orders given by the fire department. Therefore, Columbia Gas is entitled to summary judgment.

## II

We next consider whether Toledo is protected from liability by the public duty rule.

R.C. 737.11 clearly imposes upon a municipal fire department a public duty to protect the lives and property of people in case of fire.[4] When a duty which the law imposes upon public officials is a duty to the public, a failure to perform it, or an inadequate or erroneous performance generally results in a public and not an individual injury. *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222, 525 N.E. 2d 468, paragraph two of the syllabus. Thus, municipalities will not ordinarily be liable in negligence for the acts or omissions of employees when fighting fires.[5]

## A

The court of appeals found that the public duty rule only applies to injury claims based on a city's inaction, *i.e.,* nonfeasance. Since Toledo affirmatively acted to protect the warehouse property, the court reasoned, the trial court's application of the public duty rule to Toledo was erroneous. We implicitly rejected this reasoning in *Delman* v. *Cleveland Heights* (1989), 41 Ohio St. 3d 1, 534 N.E. 2d 835, when we held that the public duty rule protected a city against liability for real estate inspections conducted by city employees pursuant to a point-of-sale inspection ordinance. The applicability of the public duty rule does not depend upon whether the allegations against the municipality may be characterized as nonfeasance or as misfeasance.

A public duty does not give rise to a private duty unless a special duty or relationship to the injured party is established. *Delman, supra,* at 2, 534 N.E. 2d at 836, citing *Sawicki, supra.* "In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Sawicki, supra,* at paragraph four of the syllabus. Thus, in the absence of the assumption of an affirmative duty, a municipality will not be liable in negligence for the acts and omissions of employees when fighting fires.

Under the first prong of the test, the appellees claim Toledo assumed an affirmative duty to act on behalf of those injured by undertaking to fight the fire, by conducting regular inspections of the warehouse before the fire, and by preparing a detailed pre-fire plan of the warehouse.

---

[4] At the time of the fire in question, R.C. 737.11 provided:

"* * * The fire department shall protect the lives and property of the people in case of fire. Both the police and fire departments shall perform any other duties that are provided by ordinance. * * *" (137 Ohio Laws, Part II, 3526-3527.)

[5] Under the Political Subdivision Tort Liability Act, R.C. Chapter 2744, a municipality is not liable in damages for the acts or omissions of employees in connection with the provision or nonprovision of fire services or protection. R.C. 2744.02(A)(1) and 2744.01(C)(2)(a). The Act was effective November 20, 1985, approximately four and one-half months after the warehouse fire, and is not applicable to this cause.

These actions are not sufficient. Under the "special relationship" exception to the public duty rule, the assumption of an affirmative duty on a municipality's part requires that the municipality do more than adhere to its statutory duty. It must voluntarily assume some additional duty. By conducting regular inspections of the warehouse property, preparing a detailed pre-fire plan to more effectively combat a fire, and responding to the need to fight the warehouse fire, the Toledo fire department was doing no more than its statutory duty under R.C. 737.11 to "protect the lives and property of the people in case of fire."

### B

A more difficult issue is presented by appellees' allegation that the city assumed an affirmative duty to act on Lane's behalf by assuring Lane personnel that the fire was under control, and that Lane could safely leave its property on the premises, shut down the internal sprinkler system, and go home. The mere pronouncement by a fire department that a fire is under control does not constitute an assumption of a duty to act on anyone's behalf. However, if it can be established that Toledo assured Lane's employees that it was safe to shut down the sprinkler system, leave property (that the employees were prepared to remove) on the premises and go home, a case can be made that the fire department went beyond its statutory public duty.

Toledo contends that there is no evidence in the record that the fire department made any such assurances. Toledo submitted evidence to support its contentions. However, we are bound by the trial court's decision to treat Toledo's motion as one filed pursuant to Civ. R. 12(B)(6), and therefore our holding is based on the facts alleged in the complaint. See *Federated Dept. Stores, Inc.* v. *Lindley* (1987), 30 Ohio St. 3d 135, 30 OBR 447, 507 N.E. 2d 1114. The facts asserted in the complaint raise a genuine factual question as to whether Toledo assumed an affirmative duty toward Lane in addition to its public duty to fight fires. Thus, the first prong of the *Sawicki* test is met.

The facts alleged in the complaint are also sufficient to satisfy prongs two through four of the *Sawicki* test. Prong two is satisfied by the complaint's allegation of facts suggesting that the Toledo fire department knew that negligence in fighting the fire or in giving advice as to the status of the fire could lead to harm. Prong three is met by the allegation of direct contact between Lane personnel and fire department employees. Prong four is met by the complaint's assertion that the assurances given by the fire department were relied on by Lane, in that Lane employees left the premises without removing Lane's property, which property was eventually destroyed by the fire. From the complaint, we cannot find that Lane was unjustified in believing the fire department accurately knew the status of the fire and had the ability to protect Lane's property.

In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts warranting recovery. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753. We cannot say as a matter of law, based on the facts alleged in the complaint, that appellee Commerce & Industry can prove no set of facts entitling it to recover for the damages to Lane's property.

In addition, the complaint and

cross-claims against Toledo seek recovery for damages to property other than that of Lane. They allege no facts which could give rise to a special relationship between Toledo and the other property owners. Therefore, these claims should be dismissed pursuant to Civ. R. 12(B)(6) and the public duty rule.

### III

As an alternative to its reliance upon the public duty rule, Toledo claims immunity from liability pursuant to former R.C. 701.02.

At the time of the fire in question, R.C. 701.02 provided in full:

"Any municipal corporation shall be liable in damages for injury or loss to persons or property and for death by wrongful act caused by the negligence of its officers, agents, or servants while engaged in the operation of any vehicles upon the public highways of this state, under the same rules and subject to the same limitations as apply to private corporations for profit, but only when such officer, agent, or servant is engaged upon the business of the municipal corporation.

*"The defense that the officer, agent, or servant of the municipal corporation was engaged in performing a governmental function, shall be a full defense as to the negligence of:*

"(A) Members of the police department engaged in the operation of a motor vehicle while responding to an emergency call;

"(B) *Members of the fire department while engaged in duty at a fire,* or while proceeding toward a place where a fire is in progress or is believed to be in progress, or in answering any other emergency alarm.

"Firemen shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle in the performance of a governmental function.

"Policemen shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle while responding to an emergency call." (Emphasis added.) (134 Ohio Laws, Part II, 1428-1430.)

Toledo bases its claim on the above emphasized portion of the statute.

While a literal reading of the emphasized portion favors Toledo, words and phrases in a statute must be read in context of the whole statute. R.C. 1.42; *Dupps Co.* v. *Lindley* (1980), 62 Ohio St. 2d 305, 307, 16 O.O. 3d 354, 356, 405 N.E. 2d 716, 718; *Humphrys* v. *Winous Co.* (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 67, 133 N.E. 2d 780, 782-783, citing *Cochrel* v. *Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871. Read as a whole, the statute clearly concerns liability arising out of the operation of motor vehicles.[6] Every sentence explicitly refers to liability for

---

[6] The language relied on by Toledo is explicitly connected to operation of a motor vehicle in the Political Subdivision Tort Liability Act, which repealed R.C. 701.02, while incorporating many of its terms, after this cause of action arose (141 Ohio Laws, Part I, 1699). The Act provides that the following is a full defense to liability premised on negligent operation of a motor vehicle by an employee of a political subdivision:

"A member of a municipal corporation fire department or any other firefighting agency *was operating a motor vehicle while engaged in duty at a fire,* proceeding toward a place where a fire is in progress or is believed to be in progress, or in answering any other emergency alarm * * *." (Emphasis added.) R.C. 2744.02(B)(1)(b).

operation of motor vehicles. The language relied on by Toledo is part of a phrase which refers to fire department employees "proceeding toward a place where a fire is in progress or is believed to be in progress * * *." Such language is obviously connected with operation of a motor vehicle.

The task of reading former R.C. 701.02 as a whole includes determining the legislative purpose behind the enactment. The first paragraph of former R.C. 701.02 indicates the legislative purpose: to impose liability upon municipalities for the negligence of employees while engaged in the operation of motor vehicles for municipal business. The balance of the statute is devoted to setting out exceptions to this imposition of liability. Thus, both the imposition of liability and the exemptions therefrom relate to the operation of motor vehicles.

This reading is supported by the circumstances surrounding the enactment of G.C. 3714-1, predecessor to former R.C. 701.02. In the title of the bill promulgating G.C. 3714-1, the General Assembly characterized its purpose as "* * * relative to the liability of municipal corporations for the operation of vehicles."[7] (115 Ohio Laws 206.) When G.C. 3714-1 was enacted in 1933, municipalities enjoyed immunity for employee negligence in the performance or nonperformance of governmental functions.[8] *Broughton* v. *Cleveland* (1957), 167 Ohio St. 29, 30-31, 4 O.O. 2d 1, 2, 146 N.E. 2d 301, 303; *Nanna* v. *Village of McArthur* (1974), 44 Ohio App. 2d 22, 24-25, 73 O.O. 2d 14, 16, 335 N.E. 2d 712, 714-715. Thus, the statute was enacted to impose liability, not grant immunity. It follows that any grant of immunity in the statute must be related to the liability imposed by the statute.[9]

The appellees' allegations against Toledo do not relate to the operation of a motor vehicle. Therefore, Toledo is not entitled to immunity under former R.C. 701.02.

## IV

We affirm the judgment of the court of appeals in part and reverse in part. We remand this cause to the trial court for proceedings consistent with our decision.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., SWEENEY, WRIGHT and GREY, JJ., concur.

---

[7] Ohio courts have regarded the legislative title of a bill as an indicator of the bill's purpose. *Commercial Credit Co.* v. *Schreyer* (1929), 120 Ohio St. 568, 574, 116 N.E. 808, 810; *State* v. *Glass* (1971), 27 Ohio App. 2d 214, 216, 56 O.O. 2d 391, 393, 273 N.E. 2d 893, 895-896. Section 15(D), Article II of the Ohio Constitution mandates that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title. * * *"

[8] Sovereign immunity for municipalities endured until 1982-1983. *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 2 OBR 572, 442 N.E. 2d 749; *Enghauser* *Mfg. Co.* v. *Eriksson Eng. Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228.

[9] While municipalities enjoyed immunity in 1933, policemen were held liable for negligence in operating motor vehicles even while in the performance of official duties. *United States Fid. & Guar. Co.* v. *Samuels* (1927), 116 Ohio St. 586, 157 N.E. 325. It is against this background that the personal immunity provisions for firemen and policemen should be understood. *Rankin* v. *Sander* (1953), 96 Ohio App. 40, 54 O.O. 164, 121 N.E. 2d 91; *Spencer* v. *Heise* (1958), 107 Ohio App. 505, 9 O.O. 2d 48, 158 N.E. 2d 570.

HOLMES and GREY, JJ., concur separately.

DOUGLAS, J., dissents.

LAWRENCE GREY, J., of the Fourth Appellate District, sitting for RESNICK, J.

HOLMES, J., concurring. I am able to concur completely in the majority opinion, inclusive of the discussion of the potential liability of the city of Toledo, in that the latter was presented within the context of the trial court having granted a Civ. R. 12(B)(6) motion for dismissal of the complaint for failure to state a claim upon which relief may be granted.

Here, as the majority quite correctly points out, the mere pronouncement that a fire is under control does not constitute an assumption of a special duty to act on anyone's behalf. However, as noted by the majority, when the facts tend to show that the fire department authorities made certain statements to owners or their agents that relaxed their continued vigilance to the owners' detriment, there may be found to be a cause of action stated within these pleadings. In such an event, there may be proof that the fire department, and thus the city, went beyond its public duty. I concur.

GREY, J., concurs in the foregoing opinion.