STATE AUTOMOBILE MUTUAL INSURANCE COMPANY,

v.

TITANIUM METALS CORPORATION; Ohio Briquetting, LLC,
Appellee; Oakwood Village Fire Department, Appellant.

[Cite as *State Auto. Mut. Ins. Co. v. Titanium Metals
Corp.*, 159 Ohio App.3d 338, 2004-Ohio-6618.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83540.

Decided Dec. 9, 2004.

David & Young and Thomas J. Connick; Levy & Dubyak and Robert J. Dubyak, for appellee.

Mazanec, Raskin & Ryder, Frank H. Scialdone, and John T. McLandrich, for appellant.

---

TIMOTHY E. MCMONAGLE, Judge.

{¶ 1} Third-party defendant/appellant, Oakwood Fire Department, appeals the judgment of the Cuyahoga County Common Pleas Court that denied its motion to dismiss. For the reasons that follow, we affirm.

{¶ 2} Defendant/third-party plaintiff/appellee, Ohio Briquetting, L.L.C., was in the business of stamping briquettes from scrap titanium supplied by defendant, Titanium Metal Corporation ("TIMET"). On November 15, 2002, an explosion occurred, allegedly because of the use of contaminated scrap titanium. There was significant property damage not only to Ohio Briquetting but to several other tenants of the building.

{¶ 3} The owner of the building, M. Alan Properties, Inc., and another tenant of the building, Bencin Trucking, Inc., were insured by plaintiff, State Automobile Mutual Insurance Company, which paid approximately $850,000 in claims for property damage. State Auto thereafter brought a suit in subrogation against Ohio Briquetting and TIMET, alleging that their combined negligence was responsible for the loss sustained by its insureds.

{¶ 4} Ohio Briquetting answered, cross-claimed against TIMET for contribution and indemnification and impleaded the Oakwood Village Fire Department ("the village") and its then fire chief, Jack Maji. In its third-party complaint, Ohio Briquetting alleged that the village had been reckless in the manner in which it suppressed the ensuing chemical fire, thereby increasing the resulting property damage not only to the insureds but to Ohio Briquetting as well. Ohio Briquetting alleged that the village was aware of the various chemicals stored at its facility and knew that water-suppressant methods would exacerbate any explosions and fire already in progress.

{¶ 5} The village moved to dismiss the complaint against it under Civ.R. 12(B)(6), premising its motion on the immunity afforded by R.C. Chapter 2744 when a political subdivision is engaged in a governmental function such as providing fire protection. Ohio Briquetting opposed the motion, arguing that there is no immunity when the political subdivision exercises its judgment in a reckless and wanton manner.

{¶ 6} The trial court denied the village's motion without opinion, and this appeal followed. The village asserts that jurisdiction to hear this appeal is authorized by R.C. 2744.02(C), as amended effective April 9, 2003.[1]

{¶ 7} When reviewing a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, an appellate court's standard of review is de novo. *Perrysburg v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶ 5. In order for a complaint to be dismissed under Civ.R. 12(B)(6), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling that party to relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. In construing the complaint, a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 145, 573 N.E.2d 1063.

{¶ 8} With this standard in mind, Ohio Briquetting alleged that chemical fires involving the metallic chemical elements present at its facility—zinc, titanium, and magnesium—"constitute Class D fires, which require non-water fire suppression methods." It further alleged that the village and its fire chief "failed to abide by local, state and national fire suppressant standards and codes, and used a water suppressant system on the Class D fire, which caused and/or substantially exacerbated the explosions and fire already in progress." Ohio Briquetting alleged that State Farm's damages were the sole and proximate result of the village's recklessness and "exercise of gross negligence using the improper fire suppressant."

{¶ 9} The Ohio Political Subdivision Tort Liability Act, codified at R.C. Chapter 2744, provides, subject to certain exceptions, that a "political subdivision is not liable in damages in a civil action for * * * loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental * * * function." R.C. 2744.02(A)(1). The village is a political subdivision, and the provision of fire protection services is a governmental function. See R.C. 2744.01(C)(2)(a) and 2744.01(F).

---

1. Shortly after this appeal was filed, Ohio Briquetting moved to dismiss the appeal for lack of jurisdiction, claiming that the order appealed from was not a final order subject to immediate review. This court denied the motion without opinion. Cf. *Jackson v. Columbus,* 156 Ohio App.3d 114, 2004-Ohio-546, 804 N.E.2d 1016 (finding the April 9, 2003 amendment to R.C. 2744.02(C) applicable prospectively only).

{¶ 10} R.C. 2744.02(B) lists five exceptions to the general grant of immunity, none of which are applicable according to the village's motion to dismiss. In opposition, however, Ohio Briquetting argued that the exception set forth in R.C. 2744.02(B)(5) applied. This exception provides that "a political subdivision is liable for injury * * * or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code." Ohio Briquetting argued that R.C. 737.11 expressly imposes civil liability on the village by stating, "The fire department shall protect the lives and property of the people in case of fire."

{¶ 11} This statute, however, does not "expressly impose" liability upon the village. R.C. 2744.02(B)(5) specifically provides that "[l]iability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision * * *." Additionally, the Supreme Court of Ohio addressed the distinction between the imposition of a duty and liability in *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 357, 750 N.E.2d 554. Refusing to equate the two concepts, the *Butler* court stated:

{¶ 12} "Appellee, like the court of appeals, relies upon *Globe Am. Cas. Co. v. Cleveland* (1994), 99 Ohio App.3d 674, 679, 651 N.E.2d 1015, 1018, to support the proposition that a statute, by imposing an express duty, also imposes express liability. However, R.C. 2744.02(B)(5) specifically provides to the contrary. 'Expressly' means 'in direct or unmistakable terms: in an express manner: explicitly, definitely, directly.' * * * Webster's Third New International Dictionary (1986) 803."

{¶ 13} As in *Butler*, the statute at issue in this case, R.C. 737.11, merely imposes a responsibility or duty upon the village to protect its citizens and their property from fire. It does not, however, expressly impose liability upon the village so as to qualify as an exception under R.C. 2744.02(B)(5).[2]

{¶ 14} Ohio Briquetting, nonetheless, claims that a special relationship was formed between it and the village, making it liable for the ensuing damage. Under what is traditionally known as the "special relationship" exception to the "public-duty rule," a political subdivision may be liable in damages if it can be shown that a special relationship existed between the political subdivision and the

---

2. In its brief in opposition to the village's motion to dismiss, Ohio Briquetting alternatively argued that R.C. 2744.03(A)(5) "expressly denies" immunity to the village because the village's fire chief acted in a reckless and wanton fashion. Ohio Briquetting does not address that argument in opposition in this court. In general, however, if an exception applies, then a political subdivision may still be immune from liability if one of the defenses to liability set forth in R.C. 2744.03 is applicable. See *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. Because we have already determined that no exception applies, it is not necessary for us to consider whether any of the defenses contained in R.C. 2744.03 apply.

injured party thereby imposing a special duty under the law. See *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468.

{¶ 15} This court and other appellate courts have held that the enactment of the Ohio Political Subdivision Tort Liability Act abrogated the public-duty rule and the special-duty exception in the context of political subdivision liability. The Supreme Court of Ohio, in *Yates v. Mansfield Bd. of Edn.*, 102 Ohio St.3d 205, 2004-Ohio-2491, 808 N.E.2d 861, however, recently held otherwise. The *Yates* court acknowledged that it had "abolished the public-duty rule with regard to actions against the state brought pursuant to R.C. Chapter 2743, the Court of Claims Act," citing *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018. Nonetheless, the *Yates* court found that "[a]t present, the public-duty rule remains viable as applied to actions brought against political subdivisions pursuant to R.C. Chapter 2744."

{¶ 16} We therefore review the denial of the village's motion to dismiss in light of the special-relationship/duty test set forth in *Sawicki v. Ottawa Hills*, 37 Ohio St.3d 222, 525 N.E.2d 468. In order to demonstrate a special duty or relationship, it must be shown that there was (1) an assumption of an affirmative duty by a political subdivision, (2) knowledge on the part of the political subdivision or its agents that inaction could cause harm, (3) a direct contact between the political subdivision's agents and the injured party, and (4) that party's justifiable reliance on the political subdivision's affirmative undertaking. Id. at paragraph four of the syllabus.

{¶ 17} In its third-party complaint, Ohio Briquetting alleged that the village and its then fire chief had personal knowledge of the types and amounts of metallic chemical elements contained in the building because it "regularly consulted with [Ohio Briquetting] representatives and inspected the building" it occupied. Ohio Briquetting further alleged that while at the scene of the fire, its representatives approached the village fire chief and "reminded [the fire chief] that magnesium, titanium and zinc chemicals were inside the building and warned against the use of water [as a] fire suppressant."

{¶ 18} Although we decline to accept Ohio Briquetting's argument that the village's regular inspections are equivalent to the assumption of an affirmative duty under the first prong of the *Sawicki* test,[3] we conclude that Ohio Briquetting has sufficiently alleged that a special relationship existed between it and the village so as to state a cause of action against the village.

---

3. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 101, 543 N.E.2d 1188.

{¶ 19} We base this conclusion on Ohio Briquetting's allegation that it approached the village's fire officials, *at the scene of the fire,* and reminded them that metallic chemical elements were stored inside its facility and that they were not amenable to water suppression methods. Indeed, Ohio Briquetting alleged that it informed the village of the type of metallic chemical elements stored at its facility, warned against the use of water as a fire suppressant, and thereafter relied on the village to suppress the fire and not cause further damage by its actions. In using water, the village allegedly violated "local, state and national fire codes." According to Ohio Briquetting's allegations, the village ignored its warning and violated its own fire code when it used water to suppress the fire, which thereafter allegedly increased the damage to not only its building, but those of surrounding businesses.

{¶ 20} The Supreme Court of Ohio, in *Commerce & Industry Ins. Co. v. Toledo,* 45 Ohio St.3d 96, 543 N.E.2d 1188, addressed a similar factual scenario. In responding to a fire at a commercial building within its jurisdiction, the Toledo Fire Department instructed a tenant of that building that it could shut down its internal sprinkler system, leave its goods in the building, and go home. The tenant did so. The fire, however, spread to the tenant's facility, causing damage to the its property. The tenant's insurer thereafter brought a suit in subrogation against the city and its fire department. The *Commerce* court found that the insurer sufficiently alleged that the city assumed an affirmative duty beyond its statutory public duty so as to survive a Civ.R. 12(B)(6) motion to dismiss. Id. at 101–102, 543 N.E.2d 1188.

{¶ 21} Although the *Commerce* court relied, in part, on the oral assurances made by the fire department to the effect that it was safe to shut down the internal sprinkler system, the lack of a similar response by the fire department in the instant case does not make Ohio Briquetting's third-party complaint subject to dismissal. Indeed, the tenant in *Commerce* did not need to remind the fire department in that case to take precautions consistent with local, state, and national fire codes because of the contents of its building.

{¶ 22} Here, Ohio Briquetting alleged that it specifically reminded the village of the high probability of further injury if the village were to use water as a method of fire suppression. That Ohio Briquetting's third-party complaint does not allege that the village did not orally respond to this admonition does not mean that the village did not assume an affirmative duty so as to preclude the operation of the public-duty rule. On the contrary, we read Ohio Briquetting's allegations in describing the village's actions as alleging an implicit acknowledgment of Ohio Briquetting's admonitions, despite the village's ultimate disregard. Combining these admonitions with the allegation that the village ignored local, state, and national fire codes when it decided to use water as a fire suppression method, we

can only conclude that Ohio Briquetting sufficiently alleged that the village assumed an affirmative duty when it fought the fire in the manner in which it did and, by its actions, went beyond its statutory public duty.

{¶ 23} Therefore, we find that Ohio Briquetting has sufficiently alleged that it had a special relationship with Ohio Briquetting. According to Ohio Briquetting's third-party complaint, the village had direct contact with Ohio Briquetting; the village assumed an affirmative duty when it acknowledged the presence of metallic chemical elements that were not amenable to water suppression methods and ignored local, state and national fire codes, knowing full well that the use of water would exacerbate the damage already begun; and Ohio Briquetting relied on the village to the extent that it would take heed of its warning and not act in a manner that would exacerbate the damage already begun.

{¶ 24} Although it remains to be seen whether Ohio Briquetting can prove these allegations upon remand, its complaint sufficiently alleges that a special relationship or duty existed between it and the village so as to preclude application of the public duty rule.[4] Consequently, the trial court did not err when it denied the village's motion to dismiss for failure to state a claim under Civ.R. 12(B)(6).

{¶ 25} The village's sole assignment of error is not well taken and is overruled.

Judgment affirmed.

JAMES J. SWEENEY, J., concurs.

ANNE L. KILBANE, P.J.*

___

4. The village also argues that R.C. 2744.05 precludes recovery by Ohio Briquetting. In particular, the village relies on R.C. 2744.05(B)(1), which provides, "No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision * * *." There is no allegation in Ohio Briquetting's third-party complaint, however, that its action is based on a subrogation provision in an insurance contract or any other contract. This provision is, therefore, inapplicable to the facts of this case. Nonetheless, if the village is exempt from liability for whatever reason, a claim for contribution or indemnification would not lie.

* {¶ a} Judge Anne L. Kilbane concurred in this journal entry and opinion prior to her death on November 23, 2004.

{¶ b} The Ohio Constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements. See *State v. Pembaur* (1982), 69 Ohio St.2d 110, 23 O.O.3d 159, 430 N.E.2d 1331.