[Cite as *Lawrence v. Meridian Senior Living, L.L.C.*, 2016-Ohio-8500.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ann Lawrence, Co-Executor et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 16AP-326 |
| | | (Ct. of Cl. No. 2015-01017-PR) |
| Meridian Senior Living, L.L.C. et al., | : | |
| Defendants-Appellants, | : | (ACCELERATED CALENDAR) |
| Courtney Bonner, D.O. et al., | : | |
| Defendants-Appellees. | : | |

## D E C I S I O N

### Rendered on December 29, 2016

**On brief:** *The Scanlon Group Co., L.P.A.,* and *Patrick J. Hart*; *Magaziner & McGlade, LLC*, and *Blair L. Magaziner*, for plaintiffs-appellees. **Argued:** *Patrick J. Hart.*

**On brief:** *Bonezzi Switzer Polito & Hupp Co. L.P.A., Steven J. Hupp*, and *Ronald A. Margolis*, for appellants. **Argued:** *Steven J. Hupp.*

**On brief:** *Michael DeWine*, Attorney General, *William C. Becker*, and *Jeanna V. Jacobus*, for appellee Ohio Department of Commerce. **Argued:** *William C. Becker*.

### APPEAL from the Court of Claims of Ohio

DORRIAN, P.J.

{¶ 1} Defendants-third-party plaintiffs-appellants Meridian Senior Living, L.L.C., IPM Cambridge Senior Living, L.L.C., and Meridian at Cambridge (collectively, "appellants") appeal from a judgment of the Court of Claims of Ohio granting a motion to dismiss appellant's third-party complaint against third-party defendant-appellee, the

Ohio Department of Commerce ("ODC"). Because we conclude that the third-party complaint failed to state a claim upon which relief could be granted, we affirm.

## I. Facts and Procedural History

{¶ 2} The litigation culminating in the present appeal began with a complaint filed in the Guernsey County Court of Common Pleas by plaintiffs-appellees Ann Lawrence and Neal Halvor Tostenson (collectively, "co-executors"), in their capacity as co-executors of the estate of their father, Neal S. Tostenson ("Tostenson"). The complaint asserted that Tostenson was a resident in the memory-care unit of a residential care facility operated by Meridian Senior Living, L.L.C. and IPM Cambridge Senior Living, L.L.C., under the name Meridian at Cambridge. The complaint asserted that Tostenson was admitted to the memory-care unit on July 1, 2013 because he had Parkinson's dementia and was prone to wandering, and was categorized as a high-fall risk and a high-elopement risk. The complaint further alleged that Tostenson was discovered missing from the facility on the morning of February 11, 2014, and he was subsequently found, unresponsive, wearing little clothing in an outdoor area of the facility. Within one hour of being located, Tostenson was officially declared deceased. The complaint asserted that sometime during the early morning or the preceding night, Tostenson exited the facility into the outdoor area through an unlocked door and that his exit did not trigger an alarm. The complaint asserted claims for negligence, willful and wanton misconduct, malpractice, wrongful death, breach of contract, abuse, neglect, and violation of the Ohio Patient's Bill of Rights. The complaint also sought declaratory judgment and punitive damages.

{¶ 3} Appellants generally denied the allegations in the complaint and subsequently filed a third-party complaint against ODC. The third-party complaint asserted that on or about March 21, 2013, Richard Harris, a fire inspector employed by ODC's Division of the State Fire Marshal, conducted an inspection of the Meridian at Cambridge Facility. The third-party complaint alleged that during the course of this inspection, Russell Woleslagle, then the maintenance supervisor for Meridian at Cambridge, "requested that the facility be permitted to utilize a delayed egress lock on a door leading to the outdoor patio area of the facility in the memory-care unit which contained multiple residents with Alzheimer's disease and other forms of dementia

designated as elopement risks." (Third-party Complaint at ¶ 7.) The third-party complaint claimed that Harris informed Woleslagle that the facility could not use a delayed egress lock because it would violate the fire code. The third-party complaint asserted that Harris's response prevented Meridian at Cambridge from using delayed egress locks on the door adjacent to Tostenson's room and directly and proximately caused him to exit the facility unnoticed, which resulted in his death.

{¶ 4} After the third-party complaint was filed, the case was removed to the Court of Claims of Ohio. ODC filed a motion to dismiss the complaint, pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief could be granted. The Court of Claims granted the motion to dismiss, concluding that ODC was statutorily immune from liability and that the third-party complaint failed to establish that appellants were injured parties for purposes of the immunity statute or that there was a special relationship between ODC and appellants that would overcome ODC's statutory immunity.

## II. Assignment of Error

{¶ 5} Appellants appeal and assign the following single assignment of error for our review:

> THE TRIAL COURT ERRED IN DISMISSING MERIDIAN'S THIRD-PARTY COMPLAINT AS A SET OF FACTS EXISTED UPON WHICH IT COULD BE DETERMINED THAT THERE WAS A R.C. §2743.02(A)(3)(b) SPECIAL RELATIONSHIP BETWEEN MERIDIAN AND THE OHIO DEPARTMENT OF COMMERCE.

## III. Discussion

{¶ 6} In its sole assignment of error, appellants argue the Court of Claims erred by granting ODC's motion to dismiss, pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief could be granted. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). "Dismissal for failure to state a claim upon which relief can be granted is proper if, after all factual allegations are presumed to be true and all reasonable inferences are made in favor of the non-moving party, it appears beyond doubt from the complaint that the plaintiff could prove no set of facts warranting the requested relief." *Modern Office Methods, Inc. v. Ohio State Univ.*, 10th Dist. No. 11AP-1012, 2012-Ohio-3587, ¶ 9, citing

*State ex rel. Turner v. Houk*, 112 Ohio St.3d 561, 2007-Ohio-814, ¶ 5, and *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.  We review de novo a dismissal of a complaint for failure to state a claim upon which relief can be granted. *Id.*

{¶ 7}  Appellants' third-party complaint asserted that Harris was negligent by informing Woleslagle, in response to a direct inquiry, that using delayed egress locks would violate the fire code.  The third-party complaint further asserted that Harris's response was incorrect and that his negligent interpretation of the fire code prevented Meridian at Cambridge from installing delayed egress locks and proximately caused Tostenson to exit the memory-care unit unnoticed, which resulted in his death.

{¶ 8}  Generally, the state is "immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty." R.C. 2743.02(A)(3)(a).  Public duty is defined to include permitting, certifying, licensing, and inspecting. R.C. 2743.01(E)(1)(a). Public duty immunity does not apply, however, "under circumstances in which a special relationship can be established between the state and an injured party." R.C. 2743.02(A)(3)(b). The statute provides a four-part test for determining whether a special relationship exists that will overcome the state's public duty immunity:

> A special relationship under [R.C. 2743.02(A)(3)(b)] is demonstrated if all of the following elements exist:
>
> (i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;
>
> (ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;
>
> (iii) Some form of direct contact between the state's agents and the injured party;
>
> (iv) The injured party's justifiable reliance on the state's affirmative undertaking.

R.C. 2743.02(A)(3)(b).

{¶ 9}  The Court of Claims concluded that Tostenson was the injured party in the case, not appellants, and that appellants sought to recover contribution from ODC as a joint tortfeasor.  The court further concluded that, even if appellants were construed to be

injured parties, the third-party complaint did not set forth sufficient factual matter to demonstrate there was a special relationship between appellants and ODC.

{¶ 10} Appellants argue on appeal that the Court of Claims erred by concluding they were not injured parties for purposes of determining immunity. Appellants assert that they suffered harm through the filing of the complaint and incurred attorney fees and expenses associated with defending against that complaint. Appellants claim they are subject to further potential harm in the form of a damage award if judgment is awarded in favor of the co-executors. Appellees respond that appellants are not injured parties for purposes of the immunity statute because no damage award has been made and because attorney costs and fees are not considered damages. We need not reach this question, however, because, assuming without deciding that appellants could be considered injured parties, we conclude that the third-party complaint is insufficient to establish the existence of a special relationship between appellants and ODC.

{¶ 11} The first element that must be established to prove the existence of a special relationship between the state and an injured party is "[a]n assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured." R.C. 2743.02(A)(3)(b)(i). Appellants argue on appeal that Harris, acting on behalf of ODC, assumed an affirmative duty by "advising Meridian regarding patient-safety measures at the subject facility." (Appellants' Brief at 9.) Appellants claim that Harris's statutory duties were limited to inspecting the facility and citing existing fire code violations. By answering a question from Woleslagle about the permissibility of a type of lock that had not yet been installed, appellants argue, Harris exceeded the scope of his statutory duties and thereby assumed an affirmative duty to act on behalf of appellants.

{¶ 12} The Supreme Court of Ohio has held that in order for the state to assume an affirmative duty to act on behalf of an injured party it must "do more than adhere to its statutory duty." *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 101 (1989). "It must voluntarily assume some additional duty." *Id.* The *Toledo* case involved a negligence claim arising from a fire at a warehouse. The complaint alleged that employees of a company that had property stored in the warehouse were prepared to remove the property but that the Toledo fire department instructed them that the fire was

under control and that they could safely leave the property, turn off an internal sprinkler system, and go home. A few hours thereafter, the fire spread and destroyed most of the warehouse and the property stored therein. *Id.* at 96. The court held that the city of Toledo did not assume an affirmative duty to act on behalf of the company that had property stored in the warehouse through the actions of its fire department by fighting the fire or by conducting regular inspections of the warehouse before the fire and preparing a detailed pre-fire plan of the warehouse. *Id.* The court concluded that those actions by the fire department were part of its statutory duty to protect lives and property in case of fire. *Id.* By contrast, the court held that if it could be established that fire department personnel told the company's employees that the fire was under control and that they could safely leave its property on the premises, turn off the internal sprinkler system, and go home, a case could be made that the fire department went beyond its statutory duty. *Id.* at 101. The court concluded that, based on the allegations contained in the complaint, it could not conclude as a matter of law that no set of facts could be proved that would permit recovery of damages for the lost property. *Id.*

{¶ 13} With respect to the extent of Harris's statutory duty during the inspection, the statutes providing for regulation of residential care facilities provide that the state fire marshal shall inspect the facility before it may be issued a license to operate and at least once every 15 months thereafter. R.C. 3721.02(B)(1). The statutes governing fire inspections provide that upon identifying a violation of the fire code during an inspection, the inspector shall issue a citation to the responsible person. R.C. 3737.42; 3737.43. Additionally, as ODC observes, the regulations governing administration of the fire code provide that fire code officials "shall have the authority to render interpretations of [the fire] code." Ohio Adm.Code 1301:7-7-01(D)(1).

{¶ 14} In the third-party complaint, appellants characterize Harris's response to Woleslagle's inquiry as Harris "inserting himself into [appellants'] determination regarding patient safety measures," and thereby assuming an affirmative duty to act on appellants' behalf. (Appellants' Brief at 5.) Based on facts as alleged in the third-party complaint, however, the only reasonable inference is that Woleslagle was asking whether such a lock would be permitted under the fire code. The third-party complaint contained

the following factual allegations pertaining to the interaction between Harris and Woleslagle:

> 6. Upon information and belief, on or about March 21, 2013, State Fire Marshal inspector Richard Harris performed an inspection of the Meridian at Cambridge facility as part of his duties and responsibilities with the Department of Commerce, Division of the State Fire Marshal, pursuant to Chapter 3737 of the Ohio Revised Code.
>
> 7. During the aforementioned inspection, former Meridian at Cambridge maintenance supervisor, Russell Woleslagle, requested that the facility be permitted to utilize a delayed egress lock on a door leading to the outdoor patio area of the facility in the memory care unit which contained multiple residents with Alzheimer's disease and other forms of dementia designated as elopement risks.
>
> 8. State Fire Marshal inspector Richard Harris informed Russell Woleslagle that the facility was not permitted to utilize such a delayed egress lock on the door as it was in violation of the Ohio Fire Code adopted by the Ohio Administrative Code Section 1301:7-7.

(Third-Party Complaint at ¶ 6-8.)

{¶ 15} As noted above, fire code officials are authorized by regulation to render interpretations of the fire code. Holding that a fire inspector exceeds his statutory duties and assumes an affirmative duty to act on behalf of an individual or entity when answering a question during an inspection about the permissibility under the fire code of a particular measure would lead to the absurd result that an inspector must refuse to answer such questions or risk waiving the state's immunity. We reject this reasoning. Answering a question during the course of an inspection about whether a particular measure was permitted under the fire code is more analogous to the Toledo fire department planning for and fighting the warehouse fire in the *Toledo* case, which the Supreme Court held did not create a special relationship, than it is to assuring the property owner that the fire was under control and that its property could safely be left in place, which the court held could create a special relationship if proved true. Presuming that the factual allegations contained in the third-party complaint are true and construing all reasonable inferences in favor of appellants, we conclude it appears beyond doubt that

appellants cannot establish that the state assumed an affirmative duty to act on their behalf. Therefore, no special relationship existed between appellants and the state and ODC is entitled to statutory immunity.

{¶ 16} Having concluded that the third-party complaint fails to state a claim upon which relief can be granted with respect to the first part of the special relationship test, we need not reach the question of whether it was sufficient to establish the other three elements of that test.

{¶ 17} Appellants also argue that the motion to dismiss should have been denied because the third-party complaint was sufficient to satisfy the notice pleading standard, citing this court's decision in *Legacy Academy for Leaders & the Arts v. Mt. Calvary Pentecostal Church*, 10th Dist. No. 13AP-203, 2013-Ohio-4214. *Legacy Academy* involved a claim by the Ohio Attorney General to recover public money from a charter school. *Id.* at ¶ 2. The defendants in *Legacy*, who included members of the charter school board, filed a third-party complaint against the state auditor claiming that the auditor prepared audits concerning the school that did not conform to generally accepted accounting principles and contained negligent representations on which the defendants relied. *Id.* at ¶ 3. The Court of Claims granted a motion to dismiss the third-party complaint against the auditor for failure to state a claim upon which relief could be granted. *Id.* at ¶ 5. On appeal, this court reversed, holding that the third-party complaint alleged sufficient facts to withstand a motion to dismiss by giving the auditor fair notice of its claim that any state immunity was overcome by the existence of a special relationship. *Id.* at ¶ 16. Specifically, the court noted that the third-party complaint alleged that charter school treasurers were not required by law to be licensed and that the state auditor assumed an affirmative duty to act on behalf of volunteer members of boards of charter schools. *Id.* The court concluded that it did not appear beyond doubt that the auditor was immune from liability after accepting the allegations of the complaint as true and construing all reasonable inferences in favor of the non-moving party. *Id.* at ¶ 17. By contrast, in the present case, we conclude that even taking the facts in the third-party complaint as true and construing all reasonable inferences in favor of appellants, it appears beyond doubt that there was no special relationship between appellants and ODC. Thus, the present case is distinguishable from *Legacy*.

{¶ 18} Accordingly, we overrule appellants' sole assignment of error.

## IV.  Conclusion

{¶ 19} For the foregoing reasons, we overrule appellants' sole assignment of error and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.