[Cite as *Lytal v. Crawl for Cancer, Inc.*, 2018-Ohio-2017.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Erin Lytal et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 17AP-771 |
| v. | : | (C.P.C. No. 16CV-4963) |
| Crawl for Cancer, Inc. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on May 24, 2018

**On brief:** *Cooper & Elliott, LLC,* and *Barton R. Keyes,* for appellants. **Argued:** *Barton R. Keyes.*

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Martha Brewer Motley,* and *Mitchell A. Tobias,* for appellees. **Argued:** *Mitchell A. Tobias.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiffs-appellants, Erin Lytal and her mother, Monica Duggan, appeal from the decision of the Franklin County Court of Common Pleas granting the motion for judgment on the pleadings under Civ.R. 12(C) to defendants-appellees, Crawl for Cancer, Inc. ("CFC"), Samantha Green, and Aaron Niemeier. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

{¶ 2} CFC is a for-profit corporation that organizes an annual "pub crawl" in Columbus, Ohio, with proceeds benefitting cancer research and persons being treated for

---

[1] The facts are presented as the complaint alleges, as the standard of review requires them to be assumed as true for purposes of a motion for judgment on the pleadings under Civ.R. 12(C), or as admitted in CFC's answer. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18.

the disease. Approximately 26 percent of CFC's revenues are donated to cancer research and treatment. CFC's pub crawl of May 24, 2014 was a seven hour event attended by approximately 5,500 persons. During the event, participants visited various bars from 1:00 p.m. to 5:00 p.m. before attending an after-hours party from 5:00 p.m. to 8:00 p.m., where CFC provided 367 kegs of beer. Participants formed teams of 10 to 12 persons and paid CFC to participate. During the "crawl" portion of the event, CFC assigned each team 5 bars to visit and provided tickets to redeem 4 pitchers of beer at each bar.

{¶ 3}   One participant, Angela Yeager, drove while intoxicated after leaving the event. She hit Lytal's car after crossing the center line of the road while driving in the opposite direction, causing Lytal's car to flip over and land in a nearby field. As a result, Lytal suffered from numerous broken bones, a lacerated liver, and a traumatic head injury. Even after two years of medical care and therapy, Lytal did not completely recover and she anticipates that some of her injuries are permanent.

{¶ 4}   On May 23, 2016, Lytal and Duggan filed suit against CFC, Green, Niemeier, and five other defendants who were later dismissed. Lytal asserted a claim for "negligent and malicious conduct" against CFC, Green, and Niemeier, and Duggan asserted a derivative claim for loss of consortium. (May 23, 2016 Compl.)

{¶ 5}   After answering, CFC, Green, and Niemeier filed a motion for judgment on the pleadings under Civ.R. 12(C) on July 29, 2016. The trial court granted the motion on October 3, 2017, on the grounds that, as a matter of law, CFC, Green, and Neimeier owed no legal duty to Lytal.

{¶ 6}   Lytal and Duggan appealed. They assert the following assignment of error:

> The Trial Court erred when it granted Appellees' motion for judgment on the pleadings.

## II. STANDARD OF REVIEW

{¶ 7}   Because an appeal of a decision granting a motion for judgment on the pleadings under Civ.R. 12(C) raises only questions of law, the standard for appellate review is de novo. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. A de novo standard also applies to a trial court's determination of whether a defendant owes a plaintiff a duty of care in a negligence claim, as the existence of a duty of

care is a question of law. *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 22.

## III. ANALYSIS

{¶ 8}  Civ.R. 12(C) allows any party to move for judgment on the pleadings after the time for pleading has closed. Motions under Civ.R. 12(C) "are specifically for resolving questions of law," and a court may consider both the complaint and answer when resolving such a motion. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996), citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973). "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *Id.*, citing *Lin v. Gatehouse Constr. Co.*, 84 Ohio App.3d 96, 99 (8th Dist.1992).

{¶ 9}  The essential elements of negligence that a plaintiff must prove include: "(1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co.,* 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). In *Wallace* at ¶ 23, the Supreme Court of Ohio explained the concept of duty in detail:

> "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co.*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; see, also, *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505. This court has often stated that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271; *Commerce & Industry*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. In addition, we have also stated that the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d

198; *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph one of the syllabus.

{¶ 10} Furthermore, a determination that a defendant owes a particular duty of care to a plaintiff amounts to an:

> " 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " (Prosser, Law of Torts (4th ed.1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall.

*Id.* at ¶ 24, quoting *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

{¶ 11} As the Supreme Court of Ohio has noted, the common law rule precludes recovery by "third persons injured by an intoxicated individual, against the provider of the alcoholic beverages, regardless of whether the provider is a commercial proprietor or a social host." *Settlemyer v. Wilmington Veterans Post No. 49, Am. Legion, Inc.*, 11 Ohio St.3d 123, 125 (1984). There are exceptions arising from legislative enactment and the common law which recognize that a defendant owes a duty to prevent an intoxicated person from injuring third persons. For example, under Ohio's Dram Shop Act, a liquor permit holder may be held liable for death or injury to a third person if the liquor permit holder "knowingly sold an intoxicating beverage" to either a "noticeably intoxicated person" or an underage person who proximately caused injury to a third person. R.C. 4399.18. Another exception recognizes that "a social host has a duty to refrain from furnishing alcohol to a minor and may be civilly liable for damages to third persons if said duty is violated." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 113 (1988).

{¶ 12} In this case, appellants argue that an exception should also be recognized if the defendant "exercises some degree of control over the person consuming the [alcoholic] beverages," based on this court's holding in *Fletcher Trucking v. Columbus Fair Auto Auction*, 10th Dist. No. 94APE09-1394 (June 13, 1995). (Appellants' Brief at 10.) They argue that the allegations in the complaint described a degree of CFC's "control" over the intoxicated driver consistent with the duty recognized in *Fletcher Trucking* that made it error for the trial court to dismiss the negligence claim. These allegations included: CFC

organized a seven hour drinking party; it knew that 5,500 people would be going to the bars in the crawl; CFC had a "special relationship of control over the drinkers at their driving party," as demonstrated by giving the participants a list of bars to attend and tickets to redeem pitchers of beer at the bars; CFC knew that the participants would drink even more beer than the kegs provided; and CFC failed to take adequate precautions to protect the public from the dangers created by the event. (May 23, 2016 Compl.)

{¶ 13} In *Fletcher Trucking*, the relationship of control that served as the foundation for recognizing the defendant's duty arose from an employer-employee relationship, the employer's actual knowledge of the employee's intoxication, and the employer's affirmative assumption of the responsibility to deal with his intoxication. In that case, a supervisor was alerted that the employee was behaving erratically. *Id.* at 2. When the supervisor located the employee, he was found with a beer and "did not answer or respond" when questioned. *Id.* The supervisor suspended the employee and told him to wait in a car while they arranged a ride home for him. *Id.* at 4. The employee was seen crashing the car, then got into another car with keys in the ignition, drove it off the lot, crashed it, and injured another driving while killing himself. *Id.* at 5-7.

{¶ 14} In recognizing that the employer owed a duty of care, we noted that the employee, who had a previous conviction for drunk driving, was left unattended in a lot full of cars with keys in them when the employer knew he was intoxicated, and was seen crashing one vehicle; the employee "used an opportunity arguably created by [the employer] to inflict himself on the motoring public and would never have been on the highway but for his access to his employer's vehicles." *Id.* at 15. Key to the recognition of the employer's legal duty was the employer's actual knowledge of the employee's intoxication and its affirmative action of asserting control over him. *Id.* at 14.

{¶ 15} Here, even when the allegations of Lytal and Duggan's complaint are assumed true in all respects, they fail to describe a relationship of control comparable to the one in *Fletcher Trucking.* The intoxicated driver who injured Lytal was one of approximately 5,500 persons participating in the event organized by CFC. There is no allegation that CFC, Green, or Neimeier had actual knowledge that she was intoxicated or, like the employer in *Fletcher Trucking*, affirmatively assumed an obligation to control her after learning of the intoxication. Unlike the employer in *Fletcher Trucking*, neither CFC

nor its corporate officers provided the driver with access to vehicles. Although CFC provided all of the participants with pitchers of beer, the act of merely providing alcohol to an inebriated person is insufficient to create a general legal duty to protect the public from injuries caused by that person. *See Settlemyer.* We agree with Judge Bowman's concurring opinion in *Fletcher Trucking*: the "case addresses a particular, narrow issue," and its holding "should be confined to the facts of [that] particular case and should not be found to extend beyond it." *Id.* at 31. (Bowman, J., concurring.)

{¶ 16} For the foregoing reasons, we conclude that, as a matter of law, CFC, Green, and Neimeier did not owe a duty of care to Lytal. Consequently, she cannot state a negligence claim against them and Duggan cannot bring a derivative claim for loss of consortium. Thus, the trial court did not err when it granted the motion for judgment on the pleadings under Civ.R. 12(C). Accordingly, the assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

———————————